HAMILTON *v.* VICKSBURG, SHREVEPORT & PA-CIFIC RAILROAD.

ERROR TO THE SUPREME COURT OF THE STATE OF LOUISIANA.

Argued November 10, 1886. — Decided December 6, 1886.

Whenever the exercise of a right, conferred by law for the benefit of the public, is attended with temporary inconvenience to private parties, in common with the public in general, they are not entitled to damages therefor.

A railroad company was authorized by the Legislature of Louisiana to construct a railroad across that State, and as part of such road to construct necessary bridges for crossing navigable streams. The act made no provision for the form or character of such structures. A bridge across a navigable stream was constructed with a draw. In process of time it became decayed, and defendant in error, having succeeded to the rights of the company, employed a contractor to construct a new bridge in its place, the work to be done at a time of the year when it would least obstruct navigation. The contractor complied with his contract as to the time; but owing to unusual rains the river continued navigable, and the work was unavoidably prolonged, thereby obstructing its navigation and preventing the vessels of plaintiff in error from passing beyond the bridge. *Held :* That this was a case of *damnum absque injuriâ.*

*Escanaba Co.* v. *Chicago,* 107 U. S. 678, and *Cardwell* v. *American Bridge Co.,* 113 U. S. 205, affirmed and applied.

The case is stated in the opinion of the court. The case in the court below will be found reported in 34 La. Ann. 973.

*Mr. John T. Ludeling,* for plaintiff in error, submitted on his brief, citing *Little Rock, &c., Railroad* v. *Brooks,* 39 Arkansas, 403, and cases there cited; *Ingraham* v. *Police Jury,* 20 La. Ann. 226.; *Winnipeseogee Lake Co.* v. *Young,* 40 N. H. 420; *Atwater* v. *Schenck,* 9 Wis. 160; *The Peterhoff,* Blatchford, Prize Cases, 463; *Indianapolis & Cincinnati Railroad* v. *Stephens,* 28 Ind. 429; *Wright* v. *Hawkins,* 28 Texas, 452; *Neaderhouser* v. *State,* 28 Ind. 257; *McManus* v. *Carmichael,* 3 Iowa, 1; *Wood* v. *Fowler,* 26 Kansas, 682; *The Daniel Ball,* 10 Wall. 557; *Willamet Iron Bridge* v. *Hatch,* 19 Fed. Rep. 347; *Cardwell* v. *American Bridge Co.,* 113 U. S. 205.

*Mr. George Hoadly, Jr.,* (*Mr. George Hoadly, Mr. Edgar M. Johnson,* and *Mr. Edward Colston* were on the brief,) cited *Willson* v. *Blackbird Creek Marsh Co.,* 2 Pet. 245; *Gilman* v. *Philadelphia,* 3 Wall. 713; *Pound* v. *Turck,* 95 U. S. 459; *Escanaba Co.* v. *Chicago,* 107 U. S. 678; *Cardwell* v. *American Bridge Co.,* 113 U. S. 205.

MR. JUSTICE FIELD delivered the opinion of the court.

The authority vested by its act of incorporation in the Vicksburg, Shreveport, and Texas Railroad Company to construct a railroad from a point opposite Vicksburg to the State line of Texas, empowered it to construct as part of the road all necessary bridges for the crossing of navigable streams, which might be on its line. It was so held by the Supreme Court of the State of Louisiana, and it would seem to be a self-evident proposition. What the form and character of the bridges should be, that is to say, of what height they should be erected, and of what materials constructed, and whether with or without draws, were matters for the regulation of the State, subject only to the paramount authority of Congress to prevent any unnecessary obstruction to the free navigation of the streams. Until Congress intervenes in such cases, and exercises its authority, the power of the State is plenary. When the State provides for the form and character of the structure, its directions will control, except as against the action of Con-

gress, whether the bridge be with or without draws, and irrespective of its effect upon navigation.

As has often been said by this court, bridges are merely connecting links of turnpikes, streets, and railroads; and the commerce over them may be much greater than that on the streams which they cross. A break in the line of railroad communication from the want of a bridge may produce much greater inconvenience to the public, than the obstruction to navigation caused by a bridge with proper draws. In such cases, the local authority can best determine which of the two modes of transportation should be favored, and how far either should be made subservient to the other. *Gilman* v. *Philadelphia*, 3 Wall. 713, 729.

In the case at bar, no specific directions as to the form and character of the bridges over the streams on the line of the railroad were prescribed by the legislature of the State. The authority of the company to construct them was only an implied one, from the fact that such structures were essential to the continuous connection of the line. Two conditions, however, must be deemed to be embraced within this implied power; one, that the bridges should be so constructed as to insure safety to the crossing of the trains, and be so kept at all times; and the other, that they should not interfere unnecessarily with the navigation of the streams.

The line of road crossed a small stream, one of the tributaries of the Ouachita river, called Bouff river, which was navigable for about six months in the year. This river has its rise in Arkansas, and by its connection with the Ouachita, which empties into Red river, its waters find their way to the Mississippi. Over this river, the company constructed a bridge with a draw sufficiently large to allow the passage of steamers. It was used for years without complaint from any one, so far as the record discloses. But in 1880, it was found, upon inspection, to be decayed and unsafe for the passage of trains. The defendant, which had succeeded to the property and interests of the Vicksburg, Shreveport and Texas Company, therefore determined to rebuild it. To carry out this purpose with as little inconvenience as practicable to vessels navigating the river, the

company contracted with an experienced builder to construct the bridge during the summer months, when the river was usually too low for navigation. The work could not be begun until the subsidence of the water in July. In order to expedite its construction, the company stipulated with the contractor to prepare the timbers at its workshops and transport them to the ground as soon as the state of water would permit the work to be commenced; and it carried out its stipulation in that respect. In the construction of the new bridge it became necessary to dismantle the draw of the old one, and to erect temporary supports while the timbers and draw of the new bridge were being put in place. To prevent the stoppage of its trains while this building was going on, the company constructed a temporary bridge adjoining the old one, for their transportation, expecting to have the new bridge completed before the winter rise, which usually began near the close of December, should render the river navigable. But, early in August, rains set in, and continued almost incessantly for months, rendering the river navigable in November, much earlier than usual. The work on the new bridge was thereby greatly impeded. To obviate this impediment, as far as possible, the company added to the contractor's force a gang of its own bridge laborers, who assisted by working at night and on Sundays.

The court below found that the company did everything in its power to accelerate the work on the new bridge, but it was not completed until December 20th following. The water in the river being increased by the unusual rains, there was sufficient depth on the 6th of November to carry the plaintiff's steamer with freight above the bridge. But the steamer could not pass owing to the temporary structure and the supports used in the erection of the new bridge. For the losses alleged to have been sustained from this obstruction between the 6th of November and the 20th of December, the plaintiff brought this action.

The District Court of Louisiana gave judgment for the plaintiff in the sum of one thousand dollars, from which both parties appealed to the Supreme Court of the State — the plaintiff because he did not recover as much as he claimed, and the

defendant because there was a recovery of any sum. The Supreme Court reversed the judgment, holding that the company was authorized by the charter of the original company, to which the defendant had succeeded, to construct a bridge over the river for the passage of its trains, and, when out of repair and decayed, to replace it with a new one; that the obstruction to navigation caused by the construction of the new bridge was unavoidable, and the company could not, therefore, be held responsible for any injury resulting therefrom; that it was a case in which the defendant was entitled to the protection of the rule of *damnum absque injuriâ*. It accordingly reversed the judgment, and ordered that the action be dismissed.

The plaintiff contends, that Congress had previously acted with respect to the navigation of this river and of all other navigable waters in Louisiana, and had thereby interdicted the placing of any obstruction in them, even of a temporary character, to the passage of vessels. He cites in support of this position the act of February 20th, 1811, enabling the people of the Territory of Orleans to form a constitution and State government, the third section of which enacted that the convention called to frame the Constitution should, by an ordinance irrevocable without the consent of the United States, provide, among other things, " that the river Mississippi and the navigable rivers and waters leading into the same or into the Gulf of Mexico, shall be common highways and forever free, as well to the inhabitants of the said State as to other citizens of the United States, without any tax, duty, impost, or toll therefor, imposed by the said State," 2 Stat. 642, and also the proviso to the act of April 8th, 1812, for the admission of Louisiana, which declares that it is upon a similar condition that the State is incorporated into the Union. 2 Stat. 701, § 1.

A similar provision is found in the acts admitting the States of California, Wisconsin, and Illinois into the Union, with respect to the navigable rivers and waters in them, the purport and meaning of which have been the subject of consideration by this court. *Escanaba Co.* v. *Chicago,* 107 U. S. 678,

and *Cardwell* v. *American Bridge Company*, 113 U. S. 205. In the latter case, we had before us the clause in the act admitting California, and we held that it did not impair the power which the State could exercise over its rivers, even if the clause had no existence. We there referred to previous decisions upon a similar enactment, and said "that if we treat the clause as divisible into two provisions, they must be construed together as having but one object, namely, to insure a highway equally open to all without preference to any, and unobstructed by duties or tolls, and thus prevent the use of the navigable streams by private parties to the exclusion of the public, and the exaction of any toll for their navigation; and that the clause contemplated no other restriction upon the power of the State in authorizing the construction of bridges over them, whenever such construction would promote the convenience of the public."

The objection to the authority conferred upon the company to construct the bridge, from the legislation of Congress, is, therefore, not tenable; and we agree with the ruling of the court below that, whenever the exercise of a right, conferred by law for the benefit of the public, is attended with temporary inconvenience to private parties, in common with the public in general, they are not entitled to any damages therefor. The obstruction caused to the navigation of the stream during the progress of the work on the new bridge, therefore, afforded no ground of action. The inconvenience was *damnum absque injuria*. *Bennett* v. *City of New Orleans*, 14 La. Ann. 120; *Barbin* v. *Police Jury of Avoyelles*, 15 La. Ann. 559.

*Judgment affirmed.*