CENTRAL TRUST CO. OF NEW YORK v. WABASH, ST. L. & P. RY. CO.

(*Circuit Court, E. D. Missouri, E. D.* November 3, 1887.)

1. RAILROAD COMPANIES — RECEIVER — PRIORITY OF CLAIMS — CONTRACT WITH ROAD.

A railroad company promised the owner of a saw-mill near one of its sand-switches, which was not used for receiving freight, but only to get sand for track repairing, that it would take up lumber for him at that point in certain quantities. A month later the road notified the mill owner that it would refuse to receive any more lumber at the switch. The road subsequently passed into the hands of receivers. *Held* that, assuming the contract to be one that the company could not terminate at its pleasure, the claim for damages for its breach was not one entitling the mill owner to an allowance against the property in the hands of the receiver, or out of the earnings of the road, in preference to the mortgage bondholders.

2. SAME — LIABILITY OF — BRIDGING STREAMS — DAMAGE TO LOGS.

The grant of power to a railroad company to bridge a navigable stream carries with it, as a necessary incident, the right to repair; and when the piling necessary to such repair is driven in an ordinarily skillful manner, loss resulting therefrom to a person who uses the stream to raft logs is *damnum absque injuria.*

3. SAME.

The defendant railroad company finished repairs to its bridge across a navigable stream in the winter of 1884 and 1885 after the ice had formed on the river. The piles used in the work were cut off at the surface of the ice, and when the ice sunk later with the falling river, the stumps were cut again, so that when the ice went out the tops of the piles were from 18 to 30 inches below the surface of the water. The plaintiff rafted logs from the opening of the season down to July, when the stream became so low that it would not have been navigable even if the stumps had been removed. *Held,* that the piling had been properly removed, and that the company was not liable in damages for any loss which occurred while the river was susceptible of navigation.

At Law. On exceptions to master's report on petition of N. F. Coffey, intervenor.

*Torrey & Giran,* for intervenor Coffey.

*Geo. S. Grover* and *H. S. Priest,* for receivers.

THAYER, J., (*orally.*) The intervening petition of N. F. Coffey in the *Wabash Case* contains two causes of action. The first count is an action in form *ex contractu* to recover damages for a breach of contract. The second count is in form *ex delicto* to recover damages on account of alleged

negligence of the receivers' agents. The master has made a report recommending the dismissal of both counts. Exceptions have been filed to his report.

The contract described in the first count of the petition is a contract alleged to have been made with the officers of the Wabash, St. Louis & Pacific Railway Company before it passed into the hands of a receiver, and a breach of the same is also alleged to have occurred before the receivers were appointed. So that the first question that arises upon the first count of the petition is whether the claim is a preferential claim, such as entitles the intervenors to an equitable lien upon the property, or income of the property, in the hands of the receivers.

It appears that there was a sand switch near the town of Brunswick, in this state, at which point the railroad company was in the habit of getting sand for the purpose of repairing its track, but the switch was not used for the purpose of receiving freight. Near that switch the intervenors had a saw-mill. They applied to have cars set out upon the switch for the purpose of loading lumber, and after some correspondence had in March, 1884, the officers of the road stated that they would take up lumber at that point whenever the intervenors had as much as four car-loads of lumber to ship. About a month later, in May, 1884, they notified the intervenors that it was impracticable to take up lumber at that point any longer, and refused to do so, and it is for such action on the part of the officers of the road that the first claim for compensation is made.

The master seems to have dismissed that count of the petition upon the ground that the contract, or alleged contract, between the intervenors and the railroad company could be terminated at the pleasure of the railroad company; that it was like a parol license given to go upon land, and do certain acts, which may be terminated at pleasure. However that may be, I am very clearly of the opinion that the claim is not of a preferential character. It is not a claim, even if valid as against the railroad company, that will entitle the intervenor to an allowance against the property in the hands of the receivers, or out of the earnings of the road, in preference to the mortgage bondholders. I think that count of the petition was properly dismissed.

The next count in the petition is of this character: The railroad operated by the receivers crossed Grand river near the town of Brunswick upon a bridge, and, for all the purposes of this decision, it may be conceded that Grand river is a navigable stream. Some distance above the bridge the intervenors had standing timber which they were accustomed to cut into logs, and float down Grand river under the bridge to Brunswick. They claim that the receivers wrongfully obstructed the navigation of the river, and the second count of the petition is brought to recover damages for such obstruction of a navigable stream. It seems that in 1884 the receivers found it necessary to repair the bridge across Grand river. For the purpose of repairing it they set piles in the river to sustain or support false works under the bridge.

The intervenors' claim for damage is of two kinds:

. (1) For damage which was occasioned by the obstruction of the river by the piling while the bridge was being repaired; and (2) they claim damages for the obstruction of the river by the stumps of those piles after the bridge had been repaired, and the piles had been cut off. They claim that the piles were cut off so near the surface of the water that the stumps left standing obstructed the stream, and prevented the rafting of logs.

It was conceded on the hearing that the bridge was built by authority of law; that the railroad company had authority to cross the stream with its tracks, and to that end to build a bridge; and that one of its incidental rights under that power would be the right to repair the bridge from time to time as might be found necessary. In other words, it is not claimed that the bridge was an unlawful structure, or a public nuisance, but the claim is that in the process of repairing the bridge the work was done in an unskillful and careless manner. The master found that there was no evidence tending to show that the piling was unnecessary to the work of rebuilding or repairing the bridge, or that it was put down in an unusual manner. That is, in substance, a finding that there was no negligence on the part of the receivers in the matter of putting down the piling, and that finding or conclusion has not been excepted to by the intervenors. It stands therefore, for the purpose of this proceeding, as a final and conclusive finding against the intervenors.

That being the case, it follows that the damage, if any, sustained by the intervenors in consequence of the obstruction of navigation by the piling during the progress of the repairs cannot be recovered. If the piling was driven in an ordinarily skillful manner, as the intervenors concede by not excepting to the master's finding in that respect, then the damages which they sustained were the result of a lawful act done in an ordinarily careful and skillful manner, and the damages which they claim are necessarily *damnum absque injuria*. *Hamilton* v. *Railroad Co.*, 119 U. S. 280, 7 Sup. Ct. Rep. 206.

That leaves for consideration the question whether when the repairs were completed, and the piles were cut off, they were cut off so much below the surface of the water as not to obstruct navigation. It seems that they were cut off during the winter of 1884–85, after the ice had formed on the stream. The master reports that the piles were cut off at the surface of the ice when the river froze, and that as the water in the river fell, and the ice sunk, the stumps were again cut off, so that in the spring of the year the tops of the piles were from 18 inches to two feet and a half below the surface of the water. The master reports that after the ice went out of the stream in the spring of 1885, the intervenors rafted logs down the river continuously during that spring over the stumps and even during the summer of 1885, as late as July; that in July the river had fallen so low that it was not navigable, even if the stumps had been removed, and that the intervenors ceased to raft any more logs for that reason. Now that is in substance a finding by the master that the piling was properly removed; that the piling was cut off so far below the surface of the stream that the stumps did not obstruct navigation, when the river was susceptible of navigation.

There has been no specific exception taken to that conclusion of the master. The intervenors do say that they except to the finding of the master that they rafted logs during the spring of the year 1885, and they further say that they except to his finding that after July they did not raft any logs because the stream was too shallow for that purpose. These are the only two exceptions which the intervenors have taken on that branch of the case. On looking into the testimony upon those points I find that there is sufficient testimony in the report to sustain the master's finding. There is some testimony to the contrary, but the evidence is so conflicting that I will not undertake to overrule the master's finding on those points. I furthermore think that the intervenors should have taken specific exception to the conclusion of law involved in the master's finding of fact to the effect that the piles were properly removed. They have not done so.

The result is that the exceptions to the master's report on the intervenors' claim will be overruled, and the report confirmed.