THE DELAWARE, LACKAWANNA AND WESTERN RAILROAD COMPANY, THE MORRIS AND ESSEX RAILROAD COMPANY, JOSEPH BANGHARD AND PATRICK FLANIGAN, PLAINTIFFS IN ERROR, v. THE MEHRHOF BROTHERS' BRICK MANUFACTURING COMPANY, DEFENDANTS IN ERROR.

1. A period of time defined as between two certain days, does not include either of the terminal days.
2. A railroad company which began to rebuild a bridge crossing navigable waters on January 7th, and finished the work on March 2d, is liable for damages for obstructing navigation upon the last two days, by force of the provisions of the act respecting bridges. *Rev., p.* 87, § 10.

On writ of error to Supreme Court, bringing up the record of the case tried at the Bergen Circuit.

For the plaintiffs in error, *Bedle, Muirheid & McGee.*

For the defendants in error, *William M. Johnson* and *Gilbert Collins.*

The opinion of the court was delivered by

REED, J. This action was brought by the Mehrhof Brothers' Brick Manufacturing Company against the Delaware, Lackawanna and Western Railroad Company and their agents, to recover damages suffered by the plaintiffs by reason of an obstruction of navigation upon the Hackensack river.

The plaintiffs have a yard upon the banks of the Hackensack where they manufacture brick. Their market for their brick is principally New York city, Brooklyn and neighboring places down the river. Between their yard and the wharves where the cargoes of brick are discharged, is a railroad bridge spanning the Hackensack.

The bridge was built by the Morris and Essex railroad in 1869 or 1870, and by a lease the Delaware, Lackawanna

and Western railroad is now in possession and control of said bridge in operating the railroad which crosses it.

The bridge was constructed with draws for the passage of vessels up and down the river.    In 1887, the engineers of the Delaware, Lackawanna and Western Railroad Company viewing the bridge as unsafe, the company proceeded to rebuild the structure.    They commenced work upon the bridge on January 7th, and began to fill up the channels of the draw on January 14th.    From that time until the evening of March 2d, following, their work blocked the river for all the purposes of navigation.

The plaintiffs owned six schooners engaged in the business of carrying their brick down the river to the markets.    During the early part of the winter these vessels were lying at Newark, at Staten Island and elsewhere, having been frozen up outside the river.    The captains were notified when the ice broke, and on February 22d the boats came up the river as far as the bridge, at which point their passage was obstructed by the work on the bridge.    The boats lay below the bridge until March 2d, when they passed through the draw and pursued their way to plaintiffs' yard.

It is for the loss resulting to the plaintiffs from this loss of time by the boats that this action was brought.

At the trial the trial justice instructed the jury that, up to March 1st, the obstruction of the channel of the stream was warranted in law, but from the beginning of March 1st it was unwarranted, and the plaintiffs were entitled to recover damages after that period.

The jury assessed the damages at $219.60.

A number of exceptions were sealed, both to the rulings in respect to the measure of damages and also in regard to the construction given by the court to the statutes which were supposed to regulate the rights and liability of the railroad company in building and maintaining of its bridge.

The company recognized its position, namely, that it must find in some legislative delegation of power a justification for its obstruction of navigable waters.    The legislation touching

this particular matter is the following: In 1857 (*Pamph. L.,* *p.* 111, § 2) was passed a supplement to the charter of the Morris and Essex Railroad Company. The second section of the act confers power upon that corporation to erect and maintain bridges or viaducts on the line of said road over the Passaic and Hackensack rivers, making and maintaining thereon, at all times, necessary and convenient draws for the accommodation of the navigation upon said rivers. The act then goes on to specify the width and method of construction of the draws, and how they shall be lighted and attended.

In 1874 was passed a supplement to an act respecting bridges. *Rev., p.* 87, § 10. It provides that, whenever it shall be necessary to repair or rebuild any bridge or viaduct in this state, over any navigable river or water, the public authorities, corporation or persons so repairing or rebuilding such bridge or viaduct shall not be liable for damages occasioned by obstructing or stopping navigation thereby; *provided,* the said repairs, or rebuilding, or obstructing, or stopping of navigation be done between the 1st day of January and the 1st day of March; *and further provided,* that said repairs or rebuilding be prosecuted with all practicable dispatch; *and provided further,* that notice of such intended repairs or rebuilding be given at least three weeks prior to commencing the same, by publishing a notice thereof in some newspaper circulating in the county adjacent to such bridge or viaduct.

As has been already observed, the trial judge charged that the conduct of the railroad company in rebuilding the bridge in question was to be measured by the terms of this legislation in respect of their liability for obstructing navigation.

And in construing the provisions of the act, the court held that the railroad company were obliged to conclude their work within the period granted to it by the act of 1874; and that the period terminated on the last day of February.

One exception to this ruling was taken upon the ground that the 1st day of March is within this period by a correct construction of the act.

No case, however, has been presented where it has ever held that a period defined as between two days includes the two, or either of the two, terminal days.

Between two days does not mean on one or both of the two days.

When this word is predicable of time, it excludes both terminal days.

A policy of insurance on goods to be shipped between two certain days does not cover goods shipped on either of these days. *Atkins* v. *Boylston Fire and Marine Insurance Co.*, 5 *Metc.* 439.

An affidavit that a notice had been published a certain time between two days named excludes the days. *Bunce* v. *Reed*, 16 *Barb.* 347.

A stipulation to deliver chattels between two days whenever the purchaser might call for them, gave no right to demand them on either of the terminal days. *Cook* v. *Gray*, 6 *Ind.* 335.

Where there are to be ten days between the day of service and the first day of the next term, there must be ten clear days.

Time between two days is that which is intermediate, without computing any part of either of those days. *Robinson* v. *Foster*, 12 *Iowa* 186.

The construction of the statute in this respect was in accordance with the plain sense of untechnical language.

The second ground of exception is, that the act of 1874 does not in all cases deprive a party of the right to repair a bridge at a time other than within the period prescribed. The argument presented upon this point is substantially this, that the grant of power contained in the charter of 1857, to build and maintain bridges with necessary and convenient draws, carried with it, by implication, the authority to do all acts which were essential to maintain such bridges and draws.

If the reparation of such bridge and its draw became necessary, and such reparation, by the exertion of proper care, skill and dispatch, resulted in an obstruction of navigation,

it therefore followed that all damages springing out of this condition of affairs are *damnum absque injuria.*

In respect of the force to be given to the provisions of the act of 1874, it was insisted that this act, if applicable at all to bridges of this kind, was not intended to diminish the immunity theretofore existing, but to confer additional immunity. This was worked out by construing the act so that its effect was to relieve the company from the burden of showing that any work done within the statutory period was done at the most appropriate time or with the best appliances, or according to most efficacious methods, or with the least injury to navigation. Work done outside of the statutory period was to be executed in accordance with the restrictions theretofore imposed, upon the execution of the implied power to rebuild or repair.

If the correctness of this view of the force of act of 1874, as it is broadly stated, should be conceded, it would follow that the company is irresponsible for the injury to the plaintiffs in this cause. The work of rebuilding seems to have been necessary, and to have been executed with reasonable skill, dispatch and at the appropriate time of the year.

I am unable to acquiesce in this construction of the statute.

It is undoubtedly true that a power to build a bridge over navigable waters carries with it an implied power to make necessary repairs, if the work be done with reasonable dispatch, and in a manner and at a time of the year least likely to interrupt navigation. *Hamilton* v. *Vicksburg, Shreveport and Pacific R. R. Co.*, 119 *U. S.* 280.

This, however, in no way infringes the rule, that inasmuch as the right of navigation is a pre-existing public right, he who claims authority to impair or obstruct this right by legislative grant must show it by the clear and explicit terms of the grant itself, or at least by necessary implication. *Attorney General* v. *Hudson River R. R. Co.*, 1 *Stock.* 526.

The state or congress have the right to impose any condition upon the grantee. He can refuse or accept the grant, as he pleases. If he accepts a grant containing a proviso in

respect of the manner in which the power so conferred shall be exercised, he takes the grant *cum onere*. *Dugan* v. *Bridge Co.*, 27 *Pa. St.* 303.

The power to construct the bridge across the Hackensack was coupled with the restriction contained in these words: " Making and maintaining therein at all times necessary and convenient draws for the accommodation of the navigation upon the river."

Whether, under a correct construction of this grant, the grantees would be relieved in any degree from liability for any obstruction resulting from the closure of the draws on account of a pressing necessity that they should be repaired, is a question not now calling for an answer.

Recognizing that the occasion for such reparation and reconstruction would naturally occur, the legislature provided for it by the regulative act of 1874. That this act includes within its operation this bridge across the Hackensack is obvious, nor can there be a doubt of the power of the legislature to enact it.

As I construe the statute, it relieves the repairer or rebuilder from all liability for damages if the execution of the work is attended with four conditions :

*First.* The work must be necessary. *Second.* It must be done between January 1st and March 1st. *Third.* It must be prosecuted with reasonable dispatch. *Fourth.* Notice of the same must have been published.

The statute does not permit navigation to be obstructed during the entire period named, by the execution of any kind of work, at any rate of speed within the discretion of the repairer or rebuilder, nor does it permit the most pressing and essential work to be done outside the period so fixed.

Upon the theory of the plaintiffs in error this would not be a specimen of legislative immunity. It is true that if the charter of the company permitted no closure of the draws under any condition of fact, it would follow that the act granted immunity, but upon the assumption that there already existed a right to repair or rebuild, the act is clearly restrictive

as well as regulative. Under the statute he is restricted in respect of the time and the notice of the execution of the work, while the same obligations in regard to speed, care and skill would still exist. In either aspect, the statute seems to be intended as an exclusive measure of the power granted. If this be so, then, whenever the repairer gets aside from its protection, he must respond.

But I conceive that it is not necessary to support this judgment upon this view of the act. I think it may be admitted that emergent cases might arise where work 'might be done at another than the statutory time with impunity, and yet such an admission would not in the least touch this case. It needs no argument to reach the conclusion that, if such instances of immunity exist at all, their existence must rest upon an absolute necessity.

They are recognizable alone upon the theory that the legislature could not have had such instances in view when the act of 1874 was passed, for it were absurd to suppose that they did not intend that act to apply to all cases where it could by possibility be applicable. These exceptions would be confined to those predicaments where the necessity for rebuilding or reparation is so unforeseen or emergent that it would be impossible to wait for the arrival of the statutory period, or where the work is of. so difficult and extensive a character that its completion is impossible within the limited number of days. The work of rebuilding this bridge. presents neither of these features. The railroad company waited until the arrival of the statutory period before beginning the work, and did not use all the period when it arrived. The work was carried over into March, because so many days were lost by not commencing the work promptly on the 2d day of January. It follows that there is apparent no reason why the defendants below should be absolved from liability for damages resulting from the obstruction of navigation upon the two days in March. There is no error in the instruction of the trial justice, that this liability existed.

In regard to those exceptions taken to that part of the charge which dealt with the manner of arriving at the amount of damages which should be awarded to the plaintiffs, it is sufficient to say, that we find no error in the instruction upon that branch of the case.

Judgment is affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, GAR-RISON, MAGIE, REED, SCUDDER, VAN SYCKEL, BROWN,. SMITH, WHITAKER.    10.

*For reversal*—None.