ROGERS SAND CO. v. PITTSBURGH, FT. W. &·C. RY. CO.

(Circuit Court of Appeals, Third Circuit.   June 23, 1905.)

No. 15.

1. NAVIGABLE WATERS—BRIDGES—LAWFULNESS OF STRUCTURE.
   A bridge across a navigable stream built under authority given by the state prior to the enactment of any federal legislation on the subject is a lawful structure.

   [Ed. Note.—For cases in point, see vol. 37, Cent. Dig. Navigable Waters, § 74.]

2. SAME—RIGHT TO REBUILD LAWFUL BRIDGE—TEMPORARY STRUCTURES.
   The right to maintain a railroad bridge lawfully built across a navigable stream carries the right to rebuild the same in whole or in part when required for the safety of travel and transportation, and also the right to build such temporary structures in the stream as may be necessary to prevent the interruption of the operation of the railroad, and to maintain the same for a reasonable length of time.

   [Ed. Note.—For cases in point, see vol. 37, Cent. Dig. Navigable Waters, § 99.]

3. SAME—NECESSITY OF CONSENT OF CONGRESS.
   Neither the provision of· section 9 of the river and harbor act of March 3, 1899, as amended in 1900 (30 Stat. 1150 [U. S. Comp. St. 1901,

p. 3540]), that "it shall not be lawful to construct or commence the construction of any bridge * * * until the consent of Congress to the building of such structures shall have been obtained," nor of section 10, prohibiting "the creation of any obstruction not affirmatively authorized by Congress," applies to the rebuilding of a bridge which was lawfully in existence when the act was passed.

Appeal from the District Court of the United States for the Western District of Pennsylvania.

J. S. Ferguson, for appellant.
W. S. Dalzell, for appellee.

Before ACHESON, DALLAS, and GRAY, Circuit Judges.

DALLAS, Circuit Judge.    This is an appeal from a decree in admiralty dismissing the libel of the appellant, by which a recovery was sought for injuries sustained by the steamboat Margaret in consequence of her collision upon December 24, 1902, with a construction which the appellee had placed in the Allegheny river at a point between the cities of Pittsburgh and Allegheny.    The contention of the appellant is that:

"The bridge in question—at least that portion of it which caused the injury—was an illegal structure and a public nuisance, because, first, inasmuch as the Allegheny river was a navigable stream, the navigable portion of which did not lie wholly within the limits of a single state, no bridge could be built across it without the authority of Congress; second, that, if this position was not tenable, the bridge was an illegal structure, because it was not built according to the plans approved by the Chief of Engineers and Secretary of War."

This contention was properly rejected by the court below.    The bridge as originally built was unquestionably a lawful structure. It was authorized by the General Assembly of Pennsylvania prior to the enactment of any federal legislation upon the subject, and, "until Congress intervenes in such cases and exercises its authority, the power of the state is plenary."    It was used for years without complaint from any one, so far as the record discloses; and the particular constructions which are alleged to have caused the accident, constituted a part of the work of its rebuilding about 50 feet further down the river.    The right to do this work resulted from the right to maintain the bridge, and from the duty imposed by law upon every railroad company to keep its bridges at all times safe, and to adequately provide for the convenience of the public.    The learned proctors for the appellant insist that their position is supported by sections 7 and 10 of the river and harbor act of 1899 (Act March 3, 1899, c. 425, 30 Stat. 1150, 1151 [U. S. Comp. St. 1901, pp. 3527, 3541]); but, in our opinion, neither the provision of section 9, "that it shall not be lawful to construct or commence the construction of any bridge, * * * until the consent of Congress to the building of such structures shall have been obtained," nor the prohibition by section 10 of "the creation of any obstruction not affirmatively authorized by Congress," is applicable to the rebuilding of a bridge which, as in this instance, was lawfully in existence when the act was passed.    Hamilton v. Vicksburg, etc., Railroad Co., 119 U. S. 281, 7 Sup. Ct. 206, 30 L. Ed. 393.    Whether the application which

was made by the appellee to the Secretary of War for approval of its plans was or was not required by any part of this statute need not be decided. The fact is that a permit was obtained, and its conditions complied with, but with certain necessary modifications which were accepted by the War Department "as a virtual compliance with the permit already issued."

The right to reconstruct the bridge was coupled with the duty to exercise due care not to interfere unnecessarily with the navigation of the stream, but we think that the finding of the learned judge that this duty had not been violated by the appellee was correct. In Hamilton v. Vicksburg Railroad Co., supra, it was held that a railroad company, in rebuilding a bridge which is a connecting link of its road, may construct a temporary structure and maintain it for a reasonable time, so that the operation of the road shall not be interrupted; and the rule thus established seems to us to be plainly applicable to the facts of this case.

After attentive consideration of the record, we concur in the views expressed by the learned judge below, and for the reasons we have indicated, but which are more fully presented in his opinion, the judgment of the District Court is affirmed.

NOTE.—The following is the opinion of Buffington, District Judge, in the District Court:

BUFFINGTON, District Judge. This is a libel in admiralty filed by the Rogers Sand Company against the Pittsburgh, Ft. Wayne & Chicago Railway Company to recover damages sustained by the libelant by the sinking of its steamboat Margaret on December 24, 1902. At about eleven o'clock on the morning of that day the vessel, while passing under the Ft. Wayne Bridge spanning the Allegheny river between Pittsburgh and Allegheny City, struck some piling, and sank one of the barges it was towing. It was alleged that as a result of this accident the Margaret, before she could right herself, was carried by the heavy current against the pier of the bridge immediately below the one in question and broken in two. After an examination of the law and facts, we have reached the following conclusions:

The state of Pennsylvania, by its act of 21st March, 1789, L. B. P. 245, and the state of New York by chapter 78 of the act of March 31, 1807, recognized the Allegheny river as a navigable stream. Across the same, as stated in libelant's brief, "the railroad bridge was built many years ago under authority of the Legislature of the state of Pennsylvania." This legislative sanction and the building of the bridge antedated the passage of the river and harbor bill cited below, and, in the absence of federal legislation on the subject, the consent of Congress to such bridge is to be implied. A right to build and maintain a bridge necessarily implies a right to reconstruct. Central Trust Company v. Wabash, etc. (C. C.) 32 Fed 568. Consequently, when the railroad company had to reconstruct the bridge, no empowering act of Congress was necessary, for, having already the implied "consent of Congress to the building of such structure," upon the rebuilding thereof the approvals of the chief of engineers and the Secretary of War alone were sufficient, as provided by section 9 of the river and harbor act of March 3, 1899, as amended. After submission of plans by the railroad to the War Department, a permit was issued September 1, 1900, which, inter alia, provided: "(1) That said Railroad Company shall, in the reconstruction of the bridge, remove one of the piers in the channel on the south side of the river so as to give a clear span of three hundred and twenty feet (320 feet). * * * (3) That the engineer officer of the United States army, in charge of the locality in which the bridge is to be rebuilt, may supervise its reconstruction, in order that said plans as herein modified, shall be complied with." As the work proceeded, certain changes, which are noted in the correspondence below, were

deemed desirable, and were made without express permission of the Washington officials, though the proofs show the work was under the supervision of the local federal engineer. These changes, so far as contact with the river was concerned, only reduced the length of the piers. On January 8, 1902, the railroad company wrote the Secretary of War as follows: "The original plans provided for a new double track structure above the old double track bridge, making a width of four tracks in all. These plans were approved by the department with the modification requiring the length of the channel span to be three hundred and twenty feet. In preparing the plans to comply with the requirements of the permit, the old piers, which it had been the original intention to use, were found to be too weak to bear a structure of the very great additional weight consequent upon the increased length of the span, and new piers on each side of the channel were made necessary. The location of these piers it was found necessary to change to accommodate the addition in length to three hundred and twenty feet and their angle to the bridge had to be changed to make them parallel with the current; this latter being required in the permit when the new structure was put up. These two changes made necessary the building of not only one span to take the place of the two short ones over the channel, but of the rebuilding, as well, of two spans; one north and one south of the channel. The increased size of the members of the lengthened channel span made it impossible to space the tracks the same distance as the spacing in the old bridge, and, therefore, the tracks could not be passed from the new to the old spans, and it became necessary to rebuild the whole bridge." And to this reply was made February 5, 1902, as follows: "Replying to your letter of the 8th ultimo in relation to the bridge of the Pittsburgh, Fort Wayne and Chicago over the Allegheny river, I have the honor to advise you that after thorough consideration of the entire subject, the Department concurs with the chief of engineers in his recommendations that it is not deemed expedient to issue a new permit, but that the War Department will accept the construction proposed as a virtual compliance with the permit already issued and interpose no objections to the work." In carrying out the work, while the angle of the new piers was changed so as to conform to the course of the current, and their length to accommodate the tracks used, yet as finally completed the alignment of the new bridge was the same as the old, and the changes were accepted by the War Department as a compliance with its permit. This was all prior to the accident here involved.

The railroad company being duly vested, as we have seen, with the right to rebuild, the next inquiry is whether it properly and skillfully did the work, for the measure of its duty in that regard was to reconstruct the bridge in a careful and skillful manner, having due regard to the rights of the public and to those affected by the exercise of the franchise. Hodge v. Lehigh Valley (C. C.) 39 Fed. 449. In reconstructing the bridge the railroad maintained track communications across the stream. We are of opinion they were justified in doing so. The bridge was a connecting link in a great artery of trade and travel, and, if the maintenance of that connection necessitated a temporary interference with the right of navigation, it would seem that such temporary interference was lawful. Indeed, in the case of Hamilton v. Vicksburg, 119 U. S. 280, 7 Sup. Ct. 206, 30 L. Ed. 393, where the rebuilding of a bridge completely blocked navigation, it was held lawful, and that complete temporary stoppage of navigation subjected the company rebuilding to no legal liability therefor. This principle is in accord with that governing the use of highways generally, for, while they are designed for travel, and must therefore be kept clear of obstructions, the law justifies the latter from the necessity of the case, when they are of a temporary character. 15 Ency. of Law, p. 491. In carrying out the present work the railroad drove piling below the old piers, and extending forty feet down the stream, to which the old bridge was moved. It was kept in this position while the new piers and superstructure were being built. Furthermore, in order to strengthen the old bridge in its new alignment, a group of piling was driven in the channel span. It was against this piling the Margaret struck on the rebound after striking the piling at one of the old piers.

It is contended by the libelant that there was no permit by the Secretary

of War and chief of engineers to place a bridge on this particular alignment, forty feet down stream, and that it was therefore an unauthorized structure, and the piling to support it was an illegal obstruction. We cannot accede to this view. We think the right to rebuild necessarily carried with it the right to use means which skillful engineering practice and expert bridge construction deemed safe and necessary to replace the bridge. Now, the proofs are that the rebuilding could be done in two ways·: One was to maintain the old bridge, and construct the new simultaneously on the old alignment; the other was to follow the practice here employed. In view, however, of the fact that the old piers had to be replaced by new ones, the first method would have necessitated placing falsework substantially across the river, and wholly stopped navigation between spans. The proofs are express, and indeed there is no proof by engineers to the contrary, that the moving of the old bridge to the new alignment was good engineering practice, and was the most desirable and practical method for this work. Moreover, in the case already referred to (Hamilton v. Vicksburg, supra), such side alignment was followed, and seems to have been approved as a proper practice, although the piling there driven on the side alignment was continuous and completely blocked the passage of boats. Moreover, the permit in the case in hand left the supervision of reconstruction to the local federal engineer, and it is proved he was consulted in reference to the work as it progressed. Whether the old bridge should be moved to the new alignment during the work was, in our opinion, an engineering detail which under the permit fell under the supervision of that officer. Its temporary location on a side alignment was not one to which, by the terms of the act, resort must be had to the War Department for approval. That act contemplated that the location and plan of the permanent structure should be determined by the Secretary of War and the chief engineer, but did not contemplate that location of temporary structures to aid in reconstruction and maintaining communication should be exclusively the subject of such permit, and, unless so warranted, illegal. Such holding is not within the language of the act, and the action of the War Department officials in leaving supervision to the local federal officer is in accord with this view. Holding as we do that the bridge on the side alignment was lawful, and finding as we do that the placing of this supporting piling in the channel was proper engineering practice, and·the piling was not kept in place an unreasonable length of time, it is clear that the injury that resulted to the libelant's boat therefrom cannot be charged to the respondent. The obstruction was lawfully placed in the channel to support the bridge. The libelant, with full knowledge of its existence, saw fit to attempt to pass it at a high stage of water. Unfortunate as were the consequences, they cannot be visited upon the respondent.

A decree will therefore be entered dismissing the libel.·