No. 19,115.

The Kaw Valley Drainage District of Wyandotte County, *Plaintiff*, v. The Missouri Pacific Railway Company et al., *Defendants*.

Original proceeding in mandamus. Opinion denying motion for an injunction filed May 6, 1922. (For original opinion see 99 Kan. 188, 161 Pac. 937.)

*T. A. Pollock*, of Kansas City, for the plaintiff.

*W. P. Waggener*, of Atchison; *A. L. Berger, McCabe Moore*, both of Kansas City; *W. W. Hooper*, of Leavenworth, and *F. E. Farwell*, of Waterloo, Ia., for the defendants.

The opinion of the court was delivered by

Dawson, J.: We have here to consider an unusual motion presented by the Kaw Valley Drainage District. The motion is for *an injunction to prevent the defendants from obeying an order of this court* entered June 15, 1917.

It may be remembered that the plaintiff filed an action in this court on May 3, 1913, to require the defendants to remove an interstate railway bridge near the junction of the Kaw and Missouri rivers on the alleged ground that it was an obstruction to the flow of water and tended to increase the hazard of floods at Kansas City. After four years' time was consumed in preparing this case for trial, a large *trunkful* of evidence and a mass of other documentary and probative matter was gathered by the litigants, at much needless cost to the taxpayers of the drainage district as well as to the defendants. This court found that plaintiff's demand for the total destruction of the bridge was unreasonable (99 Kan. 188), and that the obstructive defects could be corrected as suggested by the evidence of competent engineering experts, as follows:

"By raising the entire bridge two and seven-tenths feet and removing the southeast approach within the harbor line, and removing the piling, the southeast cylinder piers, the girder span thereat, and the riprap down to fifteen feet under low water level, and by substituting steel sheet piling to protect the southeast concrete pier in lieu of the present riprap protection and by removing the latter, and by removing all the present bridge structure extending from the southeast concrete pier to the southeastern shore and substituting therefor a new steel truss span approximately two hundred and fifty feet in length to rest upon the southeastern concrete pier and stretching without obstruction over a free waterway to the harbor line on the south-

eastern shore and to rest there upon a suitable and durable abutment conforming to the plaintiff's dike."

It was therefore ordered—

"That the defendant owner of this bridge and L. S. Cass, Receiver, proceed forthwith to prepare plans for the reconstruction of the bridge in substantial conformity with the foregoing finding, and when so prepared that the defendants submit the plans to the plaintiff board for its approval, and that thereafter upon the approval or disapproval of the plaintiff board the said plans be submitted to this court for approval, and that upon the approval of this court, the said plans shall be filed with the United States Secretary of War and the proper application be made for the requisite federal sanction to reconstruct the bridge, all of which the defendants are ordered to do, with diligence and good faith; and when the proper federal sanction is obtained, the defendants shall proceed with all convenient speed to reconstruct the bridge and to prosecute the work diligently until its completion. Reasonable allowance of time will be made, as may be necessary, for delays occasioned without fault of defendants. . . .

"It is further ordered that the costs of this action be divided, plaintiff to pay half and defendants to pay half.

"It is further ordered that the jurisdiction of the cause be retained."

Waiving a review by the United States supreme court of the federal questions involved, and which in a similar case had led to the defeat of the plaintiff in its attempts to enforce its similar order for the destruction of another interstate bridge less than a mile away (*Kansas Southern Ry. v. Kaw Valley Dist.*, 233 U. S. 75), the defendants proceeded at once in good faith to comply with the order of this court. Their engineering plans, being prepared in accordance with the order of this court, were submitted to the plaintiff board for approval. That approval was denied. Defendants were compelled to return to this court for instructions. We held that the plaintiff's refusal was arbitrary and unreasonable and should be held for naught.

The defendants then submitted the plans to the War Department. The plaintiff made an ineffectual attempt before that department to prevent their approval. Consideration of the matter was necessarily deferred by the World War, but on April 6, 1920, the plans were approved by the proper officials of the War Department. Meantime the defendants were involved in financial troubles, partly owing to the greatly increased cost of labor and materials, and the War Department extended the time in which to commence the work of reconstruction.

On January 16, 1922, the plaintiff applied to the Secretary of War for the revocation of its former approval of the plans for the

Drainage District v. Railway Co.

reconstruction of the bridge, and the whole matter was again patiently reviewed (see appendix to this opinion) and the revocation denied.

Now the plaintiff asks this court to enjoin the defendants from obeying our own order. Indeed, it goes further and asks us to order the total demolition of the bridge. We shall certainly grant nothing of the sort.

Moreover, these interminable maneuvers which only hinder and delay the reconstruction of the bridge to correct its interference with flood waters ought to have stopped long ago. They must stop now. If the defendants had been permitted to correct the defects of this bridge, without this persistent and protracted course of obstruction on the part of plaintiff, the flood menace of this bridge would have been eliminated years ago. It could have been done at a cost of $80,000. Now, it is shown that it will cost $225,000.

This motion in all its phases is denied; the defendants are admonished to proceed with diligence to discharge their duty under the order of'this court issued June 15, 1917, and in the event that defendants are further hindered or delayed in the performance thereof, they may resort to this court for relief. Jurisdiction of the cause is retained.

### APPENDIX.

WAR DEPARTMENT.
OFFICE OF THE JUDGE ADVOCATE GENERAL.
WASHINGTON.

J. A. G. 823.                                    FEBRUARY 18, 1922.

MEMORANDUM for the Secretary of War.

*Subject:* Application of the Kaw Valley Drainage District for revocation of approval of plans for bridge over the Kansas River, Kansas City, Kansas.

The history of this case may be briefly stated as follows: The predecessor of the Kansas City Northwestern Railway Company constructed in 1903-1904 a bridge over the Kansas River, a navigable stream wholly within the boundaries of the State of Kansas, without having the plans of the bridge approved by the Secretary of War and the Chief of Engineers. The Kaw Valley Drainage Commission, incorporated under the laws of Kansas (General Statutes of Kansas, Ann., 1915, p. 743 *et seq.*), instituted suit in the courts of the State of Kansas to compel removal of the bridge as being a flood menace. The matter was decided by the Supreme Court of Kansas (99 Kans. 188, 161 Pac. 937). The court refused to order the removal of the bridge, but in an order entered June 15, 1917, directed its modification according to plans to be submitted for the approval of the Drainage District and the Supreme Court of Kansas, and thereafter to be filed with the Secre-

tary of War with proper application for the requisite federal sanction to re-
construct the bridge. Plans of the bridge, prepared in accordance with this
order, were subsequently disapproved by the drainage commission. There-
upon the Kansas Supreme Court in an order dated July 11, 1917, found that
the disapproval was based solely upon grounds theretofore decided ad-
versely to the plaintiff; that said disapproval was arbitrary and unreasonable
and should be held for naught. The court therefore approved the plans and
directed that they be presented to the War Department and to the proper
federal authorities in further compliance with its order of June 15, 1917. In
compliance with this order by application dated August 7, 1917, the plans
were submitted to the Secretary of War for approval, and a public hearing
was held by the district engineer at Kansas City on February 11, 1917.
[1918?] Consideration of the matter was suspended during the World War,
but it was again taken up in 1919 and on February 20, 1920, a special hearing
was given to interested parties by the Secretary of War at his office. Im-
mediately thereafter the Secretary of War requested a ruling of this office
upon the question "whether the Secretary of War and the Chief of Engineers
can approve these proposed modifications." The matter was given careful
consideration by this office, and in a memorandum for the Secretary of War,
dated March 8, 1920, the opinion was expressed that the Secretary of War
and the Chief of Engineers had authority to approve the plans. This opinion
was approved by the Secretary of War on March 16, 1920, and in accordance
therewith the plans of the bridge were formally approved by War Depart-
ment instrument signed by the Chief of Engineers, March 30, 1920, and by
the Assistant Secretary of War, April 6, 1920. By the terms of the instru-
ment the approval thereby given was to cease and be null and void, unless
the actual work of reconstruction was commenced within one year and com-
pleted within three years from the date of the instrument; but these dates
were extended by the Secretary of War on February 16, 1921, to April 6,
1922, and April 6, 1924, respectively. It is understood that the Railway Com-
pany has not yet begun the reconstruction of its bridge but that it contem-
plates commencing the work prior to the expiration of the time limit.

Under date of January 16, 1922, the Kaw Valley Drainage District, through
its Board of Directors, transmits to the Secretary of War an application for
the revocation of the War Department instrument approving the plans of
this bridge and a request that the United States institute a suit for the re-
moval of the bridge as an unlawful structure. In a memorandum ad-
dressed to the Secretary of War, February 11, 1922, the Chief of Engineers
remarks as follows:

"So far as navigation is concerned, it was my conclusion when the ap-
proval of the plans was given, that the bridge was not an unreasonable ob-
struction to navigation then existing, and that there was no prospective
increase of traffic on the river, and I know of no reason for changing this
conclusion. The bridge serves an important interstate commerce, and I con-
cur with my predecessors that under the circumstances the department would
not be justified in inaugurating any procedure either for its alteration or
removal. Moreover, it is believed that the orderly administration of the
public business requires that matters which have received such exhaustive con-
sideration and repeated decision as this should be deemed settled, and not

open to reconsideration and readjudication at the pleasure of those interested in them; otherwise the acts of the department will be kept perpetually unsettled and afloat. The Kaw Valley Drainage district has had ample opportunity to present its views relative to the phases of the case within the jurisdiction of the department, and I see no occasion for a further hearing. As a matter of courtesy, however, inasmuch as the action of the department in approving the plans for reconstructing the bridge is challenged on legal grounds, it is suggested that the papers might be referred to the Judge Advocate General for further consideration of this question. If he find no error in law, I recommend that the Kaw Valley Drainage District be advised that the department feels constrained to deny the application."

The federal law applicable to this case is as follows: Section 9 of the River and Harbor Act approved March 3, 1899 (30 Stat. 1151) provides, in part:

"That it shall not be lawful to construct or commence the construction of any bridge, dam, dike, or causeway over or in any port, roadstead, haven, harbor, canal, navigable river, or other navigable water of the United States until the consent of Congress to the building of such structures shall have been obtained and until the plans for the same shall have been submitted to and approved by the Chief of Engineers and by the Secretary of War; *Provided,* That such structures may be built under authority of the legislature of a state across rivers and other waterways the navigable portions of which lie wholly within the limits of a single state, provided the location and plans thereof are submitted to and approved by the Chief of Engineers and by the Secretary of War before construction is commenced. . . ."

Section 12 of the same act provides (30 Stat. 1151), as amended by the act of February 20, 1900 (31 Stat. 32):

"That every person and every corporation that shall violate any of the provisions of sections nine, ten, and eleven of this act, or any rule or regulation made by the Secretary of War in pursuance of the provisions of the said section eleven, shall be deemed guilty of a misdemeanor, and on conviction thereof shall be punished by a fine not exceeding twenty-five hundred dollars nor less than five hundred dollars, or by imprisonment (in the case of a natural person) not exceeding one year, or by both such punishments, in the discretion of the court. And further, the removal of any structures or parts of structures erected in violation of the provisions of the said sections may be enforced by the injunction of any circuit court exercising in any district in which such structures may exist, and proper proceedings to this end may be instituted under the direction of the attorney-general of the United States."

And section 18 of the act provides:

"That whenever the Secretary of War shall have good reason to believe that any railroad or other bridge, now constructed, or which may hereafter be constructed, over any of the navigable waterways of the United States is an unreasonable obstruction to the free navigation of such waters on account of insufficient height, width of span, or otherwise, or where there is difficulty in passing the draw opening or the draw span of such bridge by rafts, steamboats, or other water craft, it shall be the duty of the said secretary, first giving the parties reasonable opportunity to be heard, to give notice to the persons or corporations owning or controlling such bridge so to alter the same as to render navigation through or under it reasonably free, easy, and unobstructed; and in giving such notice he shall specify the changes recommended by the Chief of Engineers that are required to be made, and shall prescribe in each case a reasonable time in which to make them. If at the

end of such time the alteration has not been made, the Secretary of War shall forthwith notify the United States district attorney for the district in which such bridge is situated, to the end that the criminal proceedings here- inafter mentioned may be taken. If the persons, corporation, or association owning or controlling any railroad or other bridge shall, after receiving nôtice to that effèct, as hereinbefore required, from the Secretary of War, and within the time prescribed by him wilfully fail or refuse to remove the same or to comply with the lawful order of the Secretary of War in the premises, such persons, corporation, or association shall be deemed guilty of a misdemeanor, and on conviction thereof shall be punished by a fine not exceeding five thousand dollars, and every month such persons, corporation, or association shall remain in default in respect to the removal or alteration of such bridge shall be deemed a new offense, and subject the persons, corpora- tion, or association so offending to the penalties above prescribed: *Provided,* That in any case arising under the provisions of this section an appeal or writ of crror may be taken from the district courts or from the existing circuit courts direct to the Supreme Court either by the United States or by the defendants."

The power of Congress to regulate the placing of obstructions in the navigable waters of the United States is based upon the commerce clause of the Constitution (Const., Art. 1, Sec. 8, cl. 3), and in the act cited *supra* Congress has prescribed that it shall be unlawful to place any of the struc- tures therein mentioned, including bridges, in such waters until its consent to the building of such structure has been obtained, and until the plans for the same have been submitted to and approved by the Chief of Engineers and by the Secretary of War; but has further provided that in the case of water- ways the navigable portions of which lie wholly within the limits of a single state, such structures may be built under authority of the legislature of a state, provided the location and plans of such structure are submitted to and approved by the Chief of Engineers and by the Secretary of War prior to the commencement of construction. A violation of the provisions of section 9 is by the terms of section 12 of the act made a misdemeanor, punishable upon conviction by fine or imprisonment, or in the discretion of the court by both such punishments, and in addition legal proceedings looking to the removal of such unlawful structures may be instituted in behalf of the United States.

It seems clear, although it has been questioned by complainants in this case, that there was sufficient state authority for the original erection of this bridge by the railvay company. By act of October 31, 1868 (as found in General Statutes of Kansas, 1915, sec. 2328), it was provided that—

"*every railroad corporation shall . . . have power . . .*
"Fourth. *To construct its roads across . . . . any stream of water,* water- course . . . ., which the route of its road shall intersect or touch."

And in any event it is vell-settled that authority to build a railroad implies power to construct necessary bridges. *Union Pacific Railway Co. v. Hall,* 91 U. S. 343; *Hamilton v. Vicksburg, etc. Railway Co.,* 119 U. S. 280. As was pointed out by the court in the latter case, two conditions must be deemed to be embraced within this implied power, first, that the bridge shall be so constructed as to insure safèty to the crossing of the trains, and be so kept at all times; second, that the bridge shall not interfere unnecessarily with

navigation. The location and plans of the bridge not having been submitted to and approved by the Chief of Engineers and the Secretary of War in accordance with the provisions of section 9 of the act of March 3, 1899, it was a structure erected in violation of the provisions of section 9, whose removal might have been enforced under the provisions of section 12 of the Act. If found by the Secretary of War to be unreasonably obstructive to navigation, its alteration or removal might also have been effected under the provisions of section 18 of the Act.

Such action, however, is not mandatory, and in the view apparently that this bridge was not an unreasonable obstruction to navigation it was not interfered with by the federal authorities. As has been seen, its removal was, however, sought by the Kaw Valley Drainage Commission, not on the ground that it was an obstruction to navigation, but that it was a flood menace, which action resulted in an order of the court directing its reconstruction along certain lines. This action by the Supreme Court of Kansas, after a consideration of the pertinent state legislation, would appear to set at rest any question of state authority for the bridge when reconstructed in accordance with the order of the court; and as was pointed out by this office in its former memorandum, the fact that the original structure was built without federal approval of the plans did not operate to prevent the approval by the Chief of Engineers and the Secretary of War of plans covering the reconstruction of the bridge.

In a printed brief and argument submitted in support of its request for a reconsideration of the former action of the War Department in this case, the Kaw Valley Drainage District states as follows:

"The Secretary of War, in granting the approval complained of, appears to have based his action upon an opinion of E. A. Kreger, Acting Judge Advocate General, of date March 8, 1920, to the effect that the proposed alterations constitute a 'reconstruction,' and that permits for 'reconstruction' could be granted under the provisions of section 9 of the Act of March 3, 1899.

"The point as to whether or not the proposed alterations constituted a 'reconstruction,' and as to whether or not the Secretary of War and Chief of Engineers are authorized to approve the making of the proposed alterations, were not raised in the Supreme Court of Kansas. The judgment of that court merely requires:

'The said plans shall be filed with the United States Secretary of War and the proper application be made for the requisite federal sanction to "reconstruct" the bridge.'

"The Kaw Valley Drainage District contends that 'the requisite federal sanction' for the proposed alterations can be secured only through an Act of Congress, and that the War Department, under existing statutes, has no authority to authorize or consent to the proposed alterations of the present bridge. The validity of the approval given depends upon the correctness of the opinion of the Acting Judge Advocate General."

The Kansas Supreme Court in the case referred to on page 1 of this memorandum considered the provisions of the federal Act of March 3, 1899, with respect to the placing of structures in navigable waters, and remarked with respect thereto:

"This statute is a specific recognition by Congress itself that, notwithstanding its paramount jurisdiction of the means and instrumentalities of

interstate commerce, the bridging of navigable waters is likewise one of vital interest to the states, and that they also have a governmental concern as to proper bridging of such waterways."

· In using the term "requisite federal sanction" in its subsequent order, therefore, the court undoubtedly referred to the requisite application for approval by the Chief of Engineers and the Secretary of War of the location and plans of a bridge proposed to be reconstructed across a waterway whose navigable portion lay wholly within state limits. Obviously in the case of a bridge over such a waterway this was the appropriate method of obtaining such federal sanction.

This office remains of the view that the Secretary of War and Chief of Engineers had full authority to approve the location and plans of the bridge under the provisions of section 9 of the Act of March 3, 1899.

Complainants, however, still insist that it will be proper for the federal authorities to take action to compel the removal of this bridge, and indeed that, this is the imperative requirement of the law. On page 37 of their brief they say:

"The giving of the approval involved acquiescence in, perhaps more correctly, the approval of a criminal offense—a violation of the act of Congress of March 3, 1899. Courts refuse to aid suitors in cases where the granting of relief involves recognition, acquiescence in, or approval of fraudulent or criminal acts. Does not a similar rule apply as to administrative officers of both the state and federal government in the exercise of discretionary powers? Is not the approval of the plans for the proposed alteration of the bridge in controversy contrary to public policy. We admit that the rule to which we now refer permits a wrongdoer to remedy his wrong—but in this case the successors of the wrong-doer seek to perpetuate, to continue the wrong, with the assistance and approval of one of the highest officers of the United States."

Referring to the provisions of section 12 of the Act of March 3, 1899, with respect to the consequences which may follow the construction of a bridge in violation of the provisions of section 9 of that act, this office in its former memorandum remarked:

"It will be noted that the consequence may be two-fold, a criminal prosecution for the act, and a civil action for the removal of the unlawful structure. It is obvious that the action of the Secretary of War and Chief of Engineers in approving the plans for the *reconstruction* could have no effect upon the criminal feature; the 'misdemeanor' having been committed the guilty party is subject to prosecution, providing, of course, that the prosecution is started within the limitation as to time pertaining to criminal prosecutions. However, the effect upon the civil action is entirely different. When the *reconstruction* is completed the old bridge, the unlawful structure, has ceased to exist and a new and different structure stands in its place. The purpose of the civil action, viz., the removal of the unlawful structure, will have been accomplished by the *reconstruction*. The object upon which the civil action could act having ceased to exist, the right to bring the action ceases. The effect of the approval of the plans for the reconstruction is not to 'legalize' the old structure, but to bring about its removal and place in its stead a new and different structure. No taint of the illegality of the old structure would be transmitted to the reconstructed structure, the latter standing on its own merits, and having been built according to law will be a lawful structure."

It is to be noted that the enforcement through appropriate legal proceedings under the provisions of section 12 of the Act of March 3, 1899, *supra,*

Drainage District v. Railway Co.

of the removal of a structure built in violation of other provisions of the act, is not in the nature of a punishment. That is provided for in the penal portion of the section. It is rather in furtherance of the general purpose of the act, which is to preserve intact the navigable capacity of the navigable waters of the United States by regulating the nature of structures that may be placed therein and providing for the alteration or removal of such structures as may unreasonably obstruct navigation.

In the case of the bridge in question there appears never to have been any affirmative finding by the War Department that it was an obstruction to navigation. Had there been, it would have been the duty of the Secretary of War to proceed under the provisions of section 18 of the Act of March 3, 1899, *supra*, to bring about its alteration or removal. It is a matter of record that the Acting Chief of Engineers in an indorsement dated December 8, 1919, considered by this office when the matter was previously before it, pointed out that—

"The question of obstruction to navigation is discussed by the district and division engineers in the first and second indorsements hereon, and both in substance reach the conclusion that *the bridge as it stands* is not an unreasonable obstruction to navigation and that the proposed changes will tend to improve conditions. The division engineer thinks, however, *that they are not necessary to render navigation through or under the bridge reasonably free, easy and unobstructed. I concur in their views on that subject."*

Clearly in such a situation it was not the duty of the Secretary of War to bring the matter to the attention of the Attorney General with a view to the institution of legal proceedings looking to the removal of the bridge.

No different situation exists to-day. The Chief of Engineers, acting within the scope of his jurisdiction, has assured the Secretary of War that a bridge built or reconstructed in accordance with certain plans will not be an unreasonable obstruction to navigation, and those plans have already been approved by the Secretary of War and Chief of Engineers. In this situation, so far as the War Department is concerned, there is no ground for the initiating of action looking to the removal of the bridge.

In addition to requesting revocation of the approval of the plans of this bridge, and the institution of a suit for removal, complainants request that no extension of time for the commencement or completion of the work under said approval be granted. As to this it is sufficient to say that the time limit for beginning construction does not expire until April 6, 1922. So far as this office is advised no request for extension is before the Department, and in the absence of such request it seems inappropriate to consider the matter at this time.

In conclusion, it may be well to remark briefly upon the legal effect of an approval by the Secretary of War and the Chief of Engineers, under the relevant statutes, of the plans of structures to be placed in or across navigable waters. On this point the case of *Cummings v. Chicago*, 188 U. S. 410, is illuminating. In that case the plaintiffs, citizens of Illinois, brought suit in the Circuit Court of the United States for the Northern District of Illinois, against the city of Chicago for the purpose of obtaining a decree restraining the defendant from interfering with the construction of a dock in front of

certain lands owned by the plaintiffs and situated on the Calumet river, within the limits of that city. Plaintiffs alleged that they were proceeding under a permit issued by the Secretary of War under pertinent provisions of the Act of March 3, 1899, and that the defendant refused to recognize the permission thus given. Judgment was rendered for the defendant, and on appeal to the United States Supreme Court that judgment was affirmed. With respect to the effect of the Act of March 3, 1899, and the instrument issued thereunder by the Secretary of War the Supreme Court of the United States said:

"The effect of that act, reasonably interpreted, is to make the erection of a structure in a navigable river, within the limits of a state, depend upon the concurrent or joint assent of both the National Government and the State Government. The Secretary of War, acting under the authority conferred by Congress, *may assent to the erection* by private parties of such a structure. Without such assent the structure cannot be erected by them. But under existing legislation they must, before proceeding under such an authority, obtain also the assent of the State acting by its constituted agencies." (Italics supplied.)

To the same general effect are: *Escanaba Co. v. Chicago,* 107 U. S. 678; *Willemette Bridge Co. v. Hatch,* 125 U. S. 1; *Lake Shore & Mich. Rwy. v. Ohio,* 165 U. S. 365; *Montgomery v. Portland,* 190 U. S. 89.

This comment seems necessary because of the great weight which complainants appear to attach to the instrument whose revocation they seek and which is referred to in several places in their brief as a "permit." The fact is that without the requisite state authority it is ineffectual. It is true that it is not the practice of the War Department to issue instruments of approval in cases of this nature unless there is a showing of state authority for the work, and such a showing appears in the present case; but the action of the War Department has, of course, no binding effect upon the state, whose power in the matter is plenary and will not be interfered with by the federal government unless it come in conflict with the power vested in the federal government with respect to the protection, preservation and improvement of navigation.

This office, having found no error or [of] law in respect of the former action of the War Department in this case, shares the view of the Chief of Engineers that nothing is to be gained by affording the complainants a further opportunity to be heard, and joins in his recommendation that their application be denied.

J. A. HULL,
(SEAL) Feb. 21, 1922.                    *Acting Judge Advocate General.*
    Approved Feb. 23, 1922.

J. M. WAINWRIGHT,
(SEAL) War Dept., Feb. 23, 1922.       *Assistant Secretary of War.*