## CARDWELL *v.* AMERICAN BRIDGE COMPANY.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE
DISTRICT OF CALIFORNIA.

Submitted January 6, 1885.—Decided January 19, 1885.

The doctrine that, in the absence of legislation by Congress, a State may authorize a navigable stream within its limits to be obstructed by a bridge or highway, reasserted, and the former cases to that effect referred to.

The provision in the act admitting California, "that all the navigable waters within the said State shall be common highways and forever free, as well to the inhabitants of said State, as to the citizens of the United States, without any tax, impost, or duty therefor," does not deprive the State of the power possessed by other States, in the absence of legislation by Congress, to authorize the erection of bridges over navigable waters within the State.

That provision aims to prevent the use of the navigable streams by private parties to the exclusion of the public, and the exaction of tolls for their navigation.

Bill in equity, for the removal of a bridge erected by the defendant in error over the American River in California, below the lands of the plaintiff in error situate on that river.

The American River is a branch of the Sacramento River in California. It is entirely within the State, and navigable for small steamboats and barges from its mouth to the town of Folsom, a distance of thirty miles. By its junction with the Sacramento River, vessels starting upon it can proceed to the bay of San Francisco, and thence to adjoining States and foreign countries. It is therefore a navigable water of the United States, and, as such, is under the control of the general government in the exercise of its power to regulate foreign and inter-state commerce, so far as may be necessary to insure its free navigation.

The defendant was a corporation organized under the laws of California, and, pursuant to the authority conferred by an act of its legislature, had constructed a bridge over the American River, of twenty feet in width and three hundred feet in length, which was used as a roadway across the stream. Its floor was about fourteen feet above extreme low water, and about five feet above extreme high water; and the bridge was

without a draw or opening for the passage of vessels. Steamboats and other craft were therefore obstructed by it in the navigation of the river.

The complainant alleged that he was the owner of a large tract of land, bordering on the river, below Folsom, and raised many tons of grain each year; that he was also the owner of a steamboat and other vessels by which he could ship his grain down the river but for the obstruction caused by the bridge; that there were also large quarries of granite on his land sufficient to supply the markets of Sacramento and San Francisco for years, and also large deposits of cobble-stone which had a value for paving, and, but for the obstruction, he could ship the granite and cobble-stone by his vessels and sell them at a profit, whereas the expense of sending them by rail or other means open to him were such as to deprive him of all profit on them. He, therefore, filed his bill against the company, and prayed that it might be enjoined from maintaining the bridge across the river until a draw should have been placed in it sufficient to allow steamboats, vessels and water-craft, capable of navigating the stream, to pass and repass, freely and safely. A demurrer to the bill was sustained and the bill dismissed, and the case was brought here on appeal.

*Mr. J. J. Scrivener*, and *Mr. John L. Boone* for appellant.—
The act admitting California, 9 Stat. 452, provided in § 3 that " all the navigable waters within the said State shall be common highways and forever free, as well to the inhabitants of said State, as to the citizens of the United States, without any tax, duty, or impost therefor." This provision withdrew the subject matter of navigable rivers from the jurisdiction of the State, and distinguishes this case from the line of cases as to the power of States over them. In effect it leaves them subject to the exclusive will of Congress under article 1, section 8, of the Constitution. The court below took this view in language which we quote and adopt as part of our brief. The question is, has Congress done this with reference to the navigable waters of California? If Congress has so acted, that legislation is found in the act admitting California into the Union, which act provides, " that

all the navigable waters within the State shall be common highways, and forever free, as well to the inhabitants of said State as to the citizens of the United States, without any tax, impost, or duty therefor." 9 Stat. 452, 453. How can the American River be a "common highway," or how can it be "free" to "the citizens of the United States," or "the inhabitants of the State," with a low bridge across it, without a draw, and so constructed as to preclude all navigation by steamers or vessels? To be a common highway, or to be free to all to use as such, involves a capacity to be practically used as a highway, and such capacity is wanting where there is an impassable barrier or obstruction. "Now, an obstructed navigation cannot be said to be free." *Wheeling Bridge Case,* 13 How. 518, 565. This provision is a law of Congress, and it is valid, not as a compact between the United States and the State of California, but as a law of Congress, passed by virtue of the constitutional power of Congress to regulate commerce among the States and with foreign nations, and to establish post roads. *Pollard's Lessee* v. *Hagan,* 3 How. 212, 224, 225, 229, 230; *Wheeling Bridge Case,* above cited, 566; *Woodruff* v. *North Bloomfield Mining Co.,* 1 West Coast Rep. 183, 212. What does this provision of the statute mean? Can there be any reason to suppose that Congress intended anything else than to make or continue the navigable waters of the State, by virtue of its power to regulate commerce, practical free highways, and to take away the power of the State to destroy or wholly obstruct their navigability? Had nothing been said upon the subject in the act of admission, but subsequently, after the admission of California into the Union "on an equal footing with the original States in all respects whatever," Congress had passed a separate, independent act, with no other provision in it, providing "that all the navigable waters within the State of California shall be common highways, and forever free, as well to the inhabitants of said State as to the citizens of the United States, without any tax, impost, or duty therefor," would anybody suppose that Congress, by the passage of such an act, under the circumstances indicated, could have any other purpose than to take

control of the navigable waters of the State for the purpose of preventing any interference with, or obstruction to, their navigability, or "so far as might be necessary to insure their free navigation?" See also *Hatch* v. *Wallamet Iron Bridge Co.*, 7 Sawyer, 127; *Wallamet Bridge Co.* v. *Hatch*, 19 Fed. Rep. 347. These principles bring this case within the uniform and unqualified line of decisions for a period of sixty years from *Gibbons* v. *Ogden*, 9 Wheat. 1, to *Miller* v. *Mayor of New York*, 109 U. S. 385.

*Mr. J. B. Haggin*, and *Mr. A. T. Britton* for appellee.

Mr. Justice Field delivered the opinion of the court. He recited the facts as above stated, and continued:

The questions thus presented are neither new nor difficult of solution. Except in one particular, they have been considered and determined in many cases, of which the most important are *Wilson* v. *Blackbird Creek Marsh Co.*, 2 Pet. 245; *Pennsylvania* v. *Wheeling Bridge Co.*, 13 How. 518, 564; *Gilman* v. *Philadelphia*, 3 Wall. 713; *Pound* v. *Turck*, 95 U. S. 459; *Escanaba Co.* v. *Chicago*, 107 U. S. 678, and *Miller* v. *Mayor of New York*, 109 U. S. 385. In these cases the control of Congress over navigable waters within the States so as to preserve their free navigation under the commercial clause of the Constitution, the power of the States within which they lie to authorize the construction of bridges over them until Congress intervenes and supersedes their authority, and the right of private parties to interfere with their construction or continuance, have been fully considered, and we are entirely satisfied with the soundness of the conclusions reached. They recognize the full power of the States to regulate within their limits matters of internal police, which embraces among other things the construction, repair and maintenance of roads and bridges, and the establishment of ferries; that the States are more likely to appreciate the importance of these means of internal communication and to provide for their proper management, than a government at a distance; and that, as to bridges over navigable streams, their power is subordinate to that of Congress, as

an act of the latter body is, by the Constitution, made the supreme law of the land; but that until Congress acts on the subject their power is plenary. When Congress acts directly with reference to the bridges authorized by the State, its will must control so far as may be necessary to secure the free navigation of the streams.

In *Wilson* v. *Blackbird Creek Marsh Co.*, a dam had been constructed across a small navigable river in the State of Delaware, by authority of its legislature; and this court held that the obstruction which it caused to the navigation of the stream was an affair between the government of the State and its citizens, in the absence of any law of Congress on the subject.

In the case of *Gilman* v. *Philadelphia*, a bridge across the Schuylkill River connecting East and West Philadelphia, had been constructed by authority of the legislature of Pennsylvania. It was without a draw, and prevented the passage of vessels to wharves above it, although the river was tide water and navigable to them, and commerce had been carried on to them for years in all kinds of vessels. The owner of the wharves filed a bill to prevent the erection of the bridge, alleging that it would be an unlawful obstruction to the navigation of the river and an illegal interference with his rights, and claimed that he was entitled to be protected by an injunction against the progress of the work, and to a decree for its abatement should it be proceeded with to completion. But the court held that the State had not exceeded the bounds of her authority in permitting its construction, and until the power of the Constitution was made effective by appropriate legislation, the power of the State was plenary, and its exercise, in good faith, could not be made the subject of review here. The court observed that it was not to be forgotten that bridges, which are connecting parts of turnpikes, streets, and railroads, were means of commercial transportation, as well as navigable waters; that the commerce which passed over a bridge might be much greater than would be transported on the water obstructed; and that it was for the municipal power to weigh the considerations that applied to the subject, and to decide

which should be preferred, and how far either should be made subservient to the other.

These cases illustrate the general doctrine, now fully recognized, that the commercial power of Congress is exclusive of State authority only when the subjects upon which it is exerted are national in their character and admit and require uniformity of regulations affecting alike all the States; and that when the subjects within that power are local in their nature or operation, or constitute mere aids to commerce, the States may provide for their regulation and management, until Congress intervenes and supersedes their action.

The complainant, however, contends that Congress has intervened and expressed its will on this subject by a clause in the act of September 9, 1850, 9 Stat. 452, admitting California as a State into the Union, which declares " that all the navigable waters within the said State shall be common highways and forever free, as well to the inhabitants of said State as to the citizens of the United States, without any tax, impost, or duty therefor." 9 Stat. 453. This declaration is similar to that contained in the ordinance of 1787, for the government of the territory of the United States northwest of the Ohio River, so far as the latter relates to the navigable waters flowing into the Mississippi and the St. Lawrence. And in *Escanaba Co.* v. *Chicago* we held, with respect to the State of Illinois, that the clause was superseded by her admission into the Union, for she then became entitled to, and possessed of all the rights of domain and sovereignty which belonged to the original States. The language of the resolution admitting her declared, that it was on " an equal footing with the original States in all respects whatever; " so that, after her admission, she possessed the same power over rivers within her limits that Delaware exercised over Blackbird Creek and Pennsylvania over Schuylkill River.

The act enabling the people of Wisconsin Territory to form a Constitution and State government, and for admission into the Union, contains a similar clause. And yet, in *Pound* v. *Turck*, which was before this court at October Term, 1877, it was held, that a statute of that State which authorized the

erection of a dam across a navigable river within her limits, was not unconstitutional, in the absence of other legislation by Congress bearing on the case. The court does not seem to have considered the question as affected by the clause in the enabling act. That clause is not, it is true, commented on in the opinion, but the section containing it is referred to, and the declaration, that navigable streams within the State are to be common highways, must have been in the mind of the court. It held, however, that the case was governed by the decisions in the Delaware and Pennsylvania cases, observing that there were in the State of Wisconsin, and other States, many small streams navigable for short distances from their mouths in one of the great rivers of the country, by steamboats, but whose greatest value, in water carriage, was as outlets to saw-logs and lumber, coal and salt, and that, in order to develop their greatest utility in that regard, it was often essential that dams, booms and piers should be used, which are substantial obstructions to general navigation, and more or less so to rafts and barges ; but that to the legislature of the State the authority is most properly confided to authorize these structures where their use will do more good than harm, and to impose such regulations and limitations in their construction and use as will best reconcile and accommodate the interests of all concerned. And the court added that the exercise of this limited power may all the more safely be confided to the local legislatures as the right of Congress is recognized to interfere and control the matter whenever deemed necessary.

The clause, therefore, in the act admitting California, quoted above, upon which the complainant relies, must be considered, according to these decisions, as in no way impairing the power which the State could exercise over the subject if the clause had no existence. But independently of this consideration, we do not think the clause itself requires the construction which the court below placed upon it, and which counsel urges so earnestly for our consideration. That court held that the clause contains two provisions, one that the navigable waters shall be a common highway to the inhabitants of the State as well as to citizens of the United States ; and the other, that

they shall be forever free from any tax, impost, or duty there-for; that these provisions are separate and distinct, and that one is not an adjunct or amplification of the other. Possibly some support is given to that view by language used in the opinion in *Escanaba Co.* v. *Chicago.* In that case all the bridges over the Chicago River had draws for the passage of vessels, and we there held that a bridge constructed with a draw could not be regarded within the ordinance of 1787 as an obstruction to the navigation of the stream. We were not required to express any further opinion as to the meaning of the ordinance. But upon the mature and careful consideration, which we have given in this case to the language of the clause in the act admitting California, we are of opinion that, if we treat the clause as divisible into two provisions, they must be construed together as having but one object, namely, to insure a highway equally open to all without preference to any, and unobstructed by duties or tolls, and thus prevent the use of the navigable streams by private parties to the exclusion of the public, and the exaction of any toll for their navigation; and that the clause contemplated no other restriction upon the power of the State in authorizing the construction of bridges over them whenever such construction would promote the convenience of the public. The act admitting California declares that she is "admitted into the Union on an equal footing with the original States *in all respects whatever.*" She was not, therefore, shorn by the clause as to navigable waters within her limits of any of the powers which the original States possessed over such waters within their limits.

*Decree affirmed.*