KANSAS CITY, MEMPHIS & BIRMINGHAM RAILROAD COMPANY
*v.* JOHN T. WIYGUL ET AL.

1. NAVIGABLE WATERS. *Interstate stream. Bridges. Grant by state.*

 A state may authorize the building of a bridge, wholly within its
 territory, over a navigable interstate stream, in the absence of
 congressional action touching the subject.

2. SAME. *Railroads. Power to bridge. Repairs.*

 Power granted to a railroad company to build a bridge across a
 navigable stream includes the power to repair the same.

3. SAME. *Acts of congress. U. S. Comp. Statutes,* 1901, *p.* 3540.

 The act of congress, approved March 3, 1899, sec. 10 (30 Statutes
 at Large, 1151), prohibiting the creation of any obstruction, not
 authorized by congress, to the navigable capacity of any waters
 of the United States, is prospective and was not intended to
 take away from a railroad company the power to repair a bridge,
 built by it over an interstate stream under a grant from the
 state.

FROM the circuit court of Monroe county.

HON. EUGENE O. SYKES, Judge.

Wiygul and another, appellees, were plaintiffs and the railroad company, appellant, was defendant in the court below. From a judgment in plaintiff's favor the defendant appealed to the supreme court.

The Tombigbee river is a navigable stream, running through Mississippi and Alabama. The defendant railroad company, in repairing its bridge across this stream, obstructed to some extent the channel with pilings. Plaintiffs were engaged in floating rafts down this river, and their rafts were torn to pieces by the obstructions, and they lost some logs. This suit was brought by plaintiffs to recover from defendant the value of the logs so lost by them. The opinion of the court contains a further statement of the facts.

*J. W. Buchanan,* for appellant.

The mere grant by the state to defendant of the right to build its road, gave, of necessity, the right to construct such bridges as were essential over all intervening waterways. However, we are not driven to implication, since the company's charter grants such authority in express terms. Acts of 1886 (Miss.), ch. 192, ss. 5; *Union Pacific R. R. Co.* v. *Hall,* 91 U. S., 343.

The right to construct carries with it the right to maintain, and of course, the right to repair when necessary. Indeed, the necessary repairing of bridges is a duty. *Central Trust Co.* v. *Wabash R. R. Co.,* 32 Fed. Rep., 566.

If the defendant had the right to repair, clearly it was not liable unless it was guilty of an improper exercise of the right. If, in making repairs, it used diligence and care, "having in view the interest of those using the river, as well as the safety of the public," and placed no obstructions in the river except as were necessary, the damage to navigators resulting therefrom, if any, was *damnum absque injuria. Hamilton* v. *Vicksburg, etc., R. R. Co.,* 119 U. S., 285; *Ib.,* 34 La. Ann., 973; *Central Trust Co.* v. *Wabash, etc., R. R. Co.,* 32 Fed Rep., 566; *Cantrell* v. *Railway Co.,* 90 Tenn., 638; *Ward* v. *Louisville, etc., R. Co.,* 3 Am. & Eng. R. Cas., 506; *Green Nav. Co.* v. *C. & O. R. R. Co.,* 88 Ky., 1.

It is too well settled now, by the highest authority, to admit of question, that the state of Mississippi had power and right to confer such authority upon the company. *Hamilton* v. *Vicksburg, etc., R. Co.,* 119 U. S., 280; *Green Nav. Co.* v. *C. & O. R. Co.,* 88 Ky., 1; Wheeling Bridge Case, 18 How. (U. S.), 432; *Gillman* v. *Philadelphia,* 3 Wall. (U. S.), 713, 729; *Hamilton* v. *Vicksburg R. Co.,* 119 U. S., 282.

The different acts of congress referred to by counsel for appellee have a proviso, providing that the section enacted did not apply to any bridge, bridge draw, bridge piers . . . which had been duly authorized by law.

*W. H. Clifton,* for appellee.

[Mr. Clifton's brief was lost, misplaced or withdrawn from the record before it reached the reporter.]

Argued orally by *J. W. Buchanan,* for appellant.

WHITFIELD, C. J., delivered the opinion of the court.

The legislature of this state granted the appellant a charter (acts 1886, ch. 123, p. 192 § 2, ss. 5), by which appellant was authorized to construct the bridge in question over the Tombigbee river, which is an interstate stream, a navigable river of the United States. At the time this charter was granted, and until after this bridge was constructed, congress, which has the supreme power to control the navigation of such rivers, had not acted with respect to this river. It is well settled that as to such rivers, in the absence of congressional legislation, the states may authorize the construction of bridges over them. Wood on Nuisances, sec. 596, *et seq.;* Gould on Waters, sec. 130; *Hamilton* v. *Vicksburg,* 7 Sup. Ct., 206; 30 L. Ed., 394, with Rose's notes appended thereto, showing the subsequent citations of the case; Am. & Eng. Enc. Law (2d ed.), vol. 4, p. 923, which last states the rule thus: "It is a well-established doctrine that, subject to the exercise of the power of congress to regulate navigation, a state has the power to authorize the building of bridges over navigable and tide waters, although such bridges may, to some degree, obstruct navigaton." It is also thoroughly settled that power to bridge a navigable stream includes the right to make repairs. Gould on Waters, sec. 135, p. 267, note 5, and all authorities therein cited, especially *Rhea* v. *Newport News R. R. Co.* (C. C.), 50 Fed., 16, and *Hamilton* v. *Vicksburg, supra; Williamette Bridge Co.* v. *Hatch,* 8 Sup. Ct., 811; 31 L. Ed., 632; *Adams* v. *Ulmer,* 91 Me., 53; 39 Atl., 347. It became necessary, in 1900 and 1901, for the railroad company to repair its bridge, which it proceeded to do. Previously to the repairing of the bridge there was an 80-foot space between

the piers, through which logs could be floated. The railroad, in repairing, found i* necessary to remove the center pier, so as to keep it in the center of the channel, the channel having changed from its old position on account of a sandbar which had formed on the east side, and forced the current to the western shore. In constructing this center pier it became necessary to build a cofferdam of such size that it left a channel of only 40 feet for the floating of logs. There is ample testimony on the part of the railroad that this change was absolutely essential, and that the work was done by competent, skilled men, and in a proper manner in every way; and that the obstruction only continued during such space of time as was absolutely necessary within which to complete the repairs.

Counsel for the appellee obtained from the court the following charges: "If the defendant drove piling in the channel of the river, which materially interfered with the use of the stream for the purpose of rafting, then they will find for the plaintiff, although defendant drove piling in the river for the purpose of repairing its railroad bridge. (3) The court charges the jury that if the defendant, in repairing its railroad bridge, placed obstructions in the river which materially interfered with the use of the river for public passage of rafts made of logs cut from lands through which the river passes, then it is liable for all damages caused by said obstructions, and the jury will find for the plaintiff." And the court refused to the defendant the following charge: "The court charges the jury for the defendant that the railroad company had a right, for the safety of the traveling public and its bridge, to make the necessary repairs to its bridge; and in doing so, the company is only required to construct the same in a reasonable, proper, and skillful manner, having in view the interest of those using the river as well as the safety of the traveling public and its own property; and if the jury, from the evidence in the case, believe that the work done by the defendant on its bridge and in the river was done in a reasonable and skillful and proper manner, they will return a verdict for the defendant."

Counsel for the appellee insists that no material obstruction to navigation could be placed in the Tombigbee river, because, and merely because, it is a navigable river of the United States; that is to say, that no material obstruction to navigation could be placed in the river, even to repair a bridge previously constructed under state authority, at a time when Congress had not acted with respect to such river, merely because it was a navigable river of the United States, even though such obstruction was necessary to the repair of the bridge, and the work done skillfully done, and the obstruction continued only during the time absolutely essential for the repairing of the bridge. And it is obvious that the court, in its instructions, adopted this view. Counsel for appellee cites the case of *Pennsylvania* v. *The Bridge Company,* 14 L. Ed., 249; but Congress had acted with respect to the Ohio river, and the bridge in that case, therefore, was constructed after congress had acted. See this case analyzed in Gould on Waters, sec. 129. Counsel also cites the case of the *Monongahela Navigation C.* v. *U. S.,* 13 Sup. Ct., 622; 37 L. Ed., 471; but a careful examination of that case shows that (p. 334, 148 U. S., p. 629; 13 Sup. Ct.; 37 L. Ed., 471) "there was not only the full authority of the state of Pennsylvania, but also that, as affecting that partciular lock and dam, they were constructed at the instance and invitation of congress." It would seem that the court would have sustained the construction under state authority alone, for it declares that it was done under "the full authority of the state," and the citations in the opinion (pp. 330-333, 148 U. S.; pp. 628, 629 13 Sup. Ct., and 37 L. Ed., 471) establish the general doctrine we have laid down. The fact that the court referred to the fact that the dam was constructed at the instance and invitation of congress merely shows that the court relied upon that as an added ground for decision, not that it held that, in the absence of such congressional approval, the state authority would have been insufficient. Counsel also cites the *U. S.* v. *Boom Co.,* 20 Sup. Ct., 343; 44 L. Ed., 439, which construes sec. 10 of ch.

425 of the acts of congress of 1899 (30 Stat., 1151; U. S. Comp., St., 1901, p. 3540), but an examination of that case shows that the court distinctly held that the language, "the creation of any obstruction not affirmatively authorized by law to the navigable capacity of any of the waters of the United States is hereby prohibited," etc., embraces state authorization as well as congressional authorization. The court said: "As congress had not assumed such jurisdiction, either at the time of the passage of the act of the legislature of Washington, permitting the construction of a boom by the defendant, nor at the time of its actual construction, then, if it were constructed in a manner conformable to the state statute, it was 'affirmatively authorized by law,' at the time of the passage of the act of congress. It is contended by the government that this term refers to a law of congress, and does not include any law of a state legislature. We do not so construe section 10. Congress, it must be assumed, was aware of the fact that, until it acted upon the subject of navigable streams, which were entirely within the confines of a single state, although connecting with waters beyond its boundaries, such state had plenary power over the subjest of that navigation; and it knew that when, in the absence of any statute of congress on the subject, an obstruction to such a navigable river had been built under the authority of an act of the legislature of the state, such obstruction was legal, and affirmatively authorized by law, because it was so authorized by the law of a state at a time when congress had passed no act upon the subject. When congress, in 1890, passed the river and harbor bill, we think the expression contained in section 10 (26 Stat., 454) in regard to obstructions, 'not affirmatively authorized by law,' meant not only a law of congress, but a law of the state in which the river was situated which had been passed before congress had itself legislated upon the subject. An obstruction created under the authority of a state statute under such circumstances we cannot doubt was an obstruction 'affirmatively authorized by law.' When, therefore,

the section continues, and provides that 'any such obstructions, . . . . whether heretofore or hereafter created,' shall constitute an offense, it referred to an obstruction as described in the first sentence of the section, namely, an 'obstruction not affirmatively authorized by law.' If the obstructions were affirmatively authorized by a law of the state, it did not come within the condemnation of the section, and its continuance was, therefore, valid."

It must be obvious that the construction of the bridge at the time it was constructed is, by this case, held to be authorized by law. It is true that section 10 of the act of March 3, 1899 (30 Stat., 1151; U. S. Comp. St., 1901, p. 3540), differs from the act construed in *United States* v. *Boom Co., supra,* which was the act of 1890, in that it has substituted for the words, "authorized by law," "authorized by congress," and, as congress had not authorized the temporary and necessary obstruction caused by the cofferdam, etc., that was (counsel says) "the creation of an obstruction," within the meaning of this section 10. We think this a misconstruction of the section. The section is prospective purely, as held in the case referred to above, and prohibits the "creation of obstructions," etc. Congress had no intention, by this section, of taking away from the railroad company, the construction of whose bridge over a navigable river of the United States had been "affirmatively authorized by law," as provided, the necessary power, embraced in and carried by the grant to construct the bridge, of making necessary repairs, provided such repairs were made with due care, and within reasonable time. Counsel's construction of this section would put congress in the attitude of requiring all bridges previously constructed over navigable waters of the United States to be removed as nuisances, or at least to remain without repair until they fell in. Acts of congress must not receive a construction which attributes folly to congress. But it is clear from previous legislation that congress always provides against such retroactive effect of legislation of this char-

acter; for by section 7 of the act of September 19, 1890 (26 Stat., 454), as well as its amendment (section 3 of the act of July 13, 1892, 27 Stat., 110), it appears that congress, by express proviso, saved such bridges previously built from the operation of said sections, the language of the proviso being, "Provided that this section shall not apply to any bridge, drawbridge, piers and abutments, the construction of which has heretofore been duly authorized by law."

The consideration of these acts of congress, therefore, clearly shows that congress had sedulously guarded against applying these various sections in river and harbor bills providing penalties for putting such obstructions in such navigable waters from having any retroactive application to bridges previously constructed under "affirmative authorization of law."

Counsel for appellee misconceives the power of a state, in the absence of congressional legislation, to authorize the construction of bridges over navigable rivers of the United States. He allows himself to be confused by the difference as to the law in its application to rivers wholly within a state and interstate rivers. The law is, as we have stated it above, but we quote in conclusion, to adopt as our own, the clearest exposition of the subject we have yet found—that in *Rhea* v. *New Port News Company* (C. C.), 50 Fed., 16. Judge Jackson says: "The Wheeling Bridge Case, 13 How., 518; 14 L. Ed., 249, specially relied on to support the master's conclusion, does not control the present case. It will be seen by reference to the leading opinion in the Wheeling Bridge Case that the law of Virginia, which authorized the erection of the bridge there complained of, was held to be inoperative chiefly on two grounds: First, because it impaired the obligation of the compact between Virginia and Kentucky that the use and navigation of the Ohio, so far as the territory of the said states was concerned, should be free and common to the citizens of the United States; and, second, because it was in conflict with the legislation of congress, which has expressly sanctioned said compact, and thereby made it a

'law of the Union.' In the present case there is no such compact between Tennessee and Kentucky in respect to the Cumberland river; nor has congress, under its constitutional authority, legislated on the subject. The Wheeling bridge was of itself a permanent obstruction to navigation, while defendant's structure or false work was only a temporary and partial interruption to the usual course of navigation, with provision and arrangement made for the transfer of freight and passengers without extra charge to either, and without serious delay, risk, or danger. The question of whether the state of Kentucky had the constitutional right to authorize the erection of a bridge across the Cumberland river within its jurisdiction, and the consequent lawfulness or unlawfulness of defendant's temporary obstruction to navigation in rebuilding said bridge in order to restore its severed line, must, in the opinion of the court, be settled and determined by the principles announced in the cases of *Willson* v. *Creek Marsh Co.,* 2 Pet., 245; 7 L. Ed., 412; *Palmer* v. *Commissioners,* 3 McLean, 226 Fed. Cas. No. 10688; *Railroad Co.* v. *Ward,* 2 Black, 494; 17 L. Ed., 311; *Gilman* v. *Philadelphia,* 3 Wall., 721; 18 L. Ed., 96; *Pound* v. *Turck,* 95 U. S., 462; 24 L. Ed., 525; *Transportation Co.* v. *Chicago,* 99 U. S., 643; 25 L. Ed., 336; *Mobile* v. *Kimball,* 102 U. S., 691; 26 L. Ed., 238; *Transportation Co.* v. *Chicago,* 107 U. S., 687; 2 Sup. Ct., 185; 27 L. Ed., 442; *Miller* v. *Mayer, etc.,* 109 U. S., 385; 3 Sup. Ct., 228; 27 L. Ed., 971; *Cardwell* v. *Bridge Co.,* 113 U. S., 205; 5 Sup. Ct., 423; 28 L. Ed., 959; *Hamilton* v. *Railroad Co.,* 119 U. S., 281; 7 Sup. Ct. 206; 30 L. Ed., 393; *Huse* v. *Glover,* 119 U. S., 543; 7 Sup. Ct., 313; 30 L. Ed., 487; *Sands* v. *Improvement Co.,* 123 U. S., 293; 8 Sup. Ct., 113; 31 L. Ed., 149; *Bridge Co.* v. *Hatch,* 125 U. S., 1; 8 Sup. Ct., 811; 31 L. Ed., 629. It is not necessary to review these decisions. While they establish beyond all question the paramount authority of congress, under the commerce clause of the constitution, over all

navigable waters of the United States, they also settle the proposition that, until congress exercises its superior right of control and regulation, the state or states within whose territorial limits such waters or streams are located may directly or through delegated authority authorize the erection of bridges across the same, and that such structures are not unlawful until so declared by congress. In respect to such structures over navigable waters within the limits of a state, nonaction by congress is not a declaration that such waters must remain free and unobstructed, but that the state's authority over the same may be exercised to the extent, at least, of permitting and authorizing the establishment of ferries, and the building of bridges over the same, necessary or convenient for either its local or interstate commerce. Navigable waters lying within the limits of a state are both state and national in their character, with a paramount right of control or regulation in the general government when congress chooses to exercise the authority over the same. But until such authority is exercised the jurisdiction and power of the state to authorize the erection or construction of bridges over the same is clearly established. But it is urged by counsel for complainants that such authority of the state is confined, as reported by the special master, to cases in which the navigable stream or water is located wholly throughout its entire length, within the limits of the state. It is true that in most of the cases above cited the public or navigable waters were wholly within the limits of the state authorizing the erection of bridges or obstructions in or over the same, and that expressions are found in one or more of the opinions which apparently attach some importance to that fact. The decisions did not, however, proceed or rest upon that ground, but upon the principle that such portions of navigable waters as lay or were embraced within the limits of territorial jurisdiction of the state were subject to state authority, in respect to bridges over the same, until congress exercised its superior

and paramount authority of regulation and control. Navigable waters entirely within the limits of a state stand upon the same footing, and are subject to the same controlling authority of congress, as those extending through or reaching beyond the state. The right of the state, in absence of congressional regulation to the contrary, to authorize the erection of bridges over such portion of navigable waters as may be embraced within its limits, does not depend upon the length of such waters, nor is the state's authority restricted or affected by the fact that some portion of the stream may extend beyond its territorial jurisdiction."

It follows from these views that the court erred in giving the instructions above quoted to the plaintiff, and in refusing the instruction above set out to the defendant.

*Reversed and remanded.*