### In re LOS ANGELES LUMBER PRODUCTS CO., Ltd.

No. 31352.

District Court, S. D. California, Central Division.

April 20, 1942.

78

Gibson, Dunn & Crutcher, of Los Angeles, Cal., for debtor corporation.

Earl Warren, Atty. Gen., H. H. Linney, Asst. Atty. Gen., and John L. Nourse, James E. Sabine, and R. S. McLaughlin, Deputy Attys. Gen., for the State of California.

JENNEY, District Judge.

On July 25, 1939, the State of California filed a tax claim against the estate of Los Angeles Lumber Products Company, Ltd (hereinafter called the "debtor") for $11,-113.66 plus interest. On July 19, 1940, demand for payment was made. The demand is in three parts, which total $10,-757.89: (1) $6,822.93 for retail sales taxes accruing prior to the commencement of bankruptcy; (2) $389.39 for sales taxes accruing subsequent to the commencement of bankruptcy; and (3) $3,545.57 for use taxes. Additional charges total $1,056.62, $137.82 being for interest and $918.80 for penalties, thus making a grand total of $11,814.51. On December 16, 1941, the debtor filed objections to the allowance of these items.

The matter was referred to a special master, who held hearings upon the claim and objections thereto.

During the hearings the parties agreed upon the basic formulae applicable to the sales tax part of the claim, and a stipulation filed December 15, 1941, concurred in by the special master, fixed that portion of the claim at $3,806.21. A report to this effect was filed December 15, 1941, and on the same day the court made an order allowing the sales tax portion of the claim as fixed at $3,806.21, plus interest on the agreed sum to December 15, 1941. Pursuant to such order, that sum has been paid and the item discharged.

The present report deals principally with the use tax item and the penalties. The state has filed written objections to the report within the time required by Rule 53(e) (2) of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c. They are directed only to the recommendation that the use tax of $3,545.57, plus interest at 6% on the sum of $3,165.-69 from April 15, 1940, to date of payment, be disallowed.

The first matter which will be determined is the liability of the debtor for the use tax. The facts upon which this claim is based are stated in the master's report as follows:

"It is conceded by the parties that the use tax item is based upon the building of a barge of more than 1000 tons burden by the debtor corporation within the state and sold by it within the state to the General Petroleum Corporation for use within the state." (Report, p. 3, lines 1–4, inclusive.)

The California Retail Sales Tax Act, Cal.Stats.1933, p. 2599, was enacted in 1933 and amendatory provisions have since been added. It is a tax of 3% imposed upon the gross receipts of California retailers for the privilege of selling tangible personal property at retail in this state. The Use Tax Act, Cal.Stats.1935, p. 1297, was added to the state's taxing system in 1935 and it, too, has been amended from time to time. It is an excise tax upon the storage, use, or other consumption of tangible personal property purchased from retailers for storage, use, or consumption within this state. The rate has always been 3% of the sales price.

In 1937, amendments to the Sales and Use Tax Acts, which are very similar in their subject matter, were adopted. Both became effective August 27, 1937. Section 5.7 of the Sales Tax Act, Cal.Stats. 1937, p. 1326, reads as follows:

"There are hereby specifically exempted from the provisions of this act and from the computation of the amount of tax levied, assessed or payable under this act

the gross receipts from sales by builders thereof of vessels of more than one thousand tons burden."

Section 4.7 of the Use Tax Act, Cal. Stats.1937, p. 1327, reads as follows: "The storage, use or other consumption in this State of the following tangible personal property is hereby specifically exempted from the tax imposed by this act, namely, any ship of more than one thousand tons burden purchased in this State from the builders thereof, with respect to which this tax would, if such ship had been purchased outside this State or purchased in interstate commerce, be inoperative because prohibited under the Constitution or the laws of the United States of America or the Constitution of this State."

One of the first cases before the United States Supreme Court involving the constitutionality of a general use tax was decided March 29, 1937. Henneford v. Silas Mason Co., 300 U.S. 577, 57 S.Ct. 524, 81 L.Ed. 814. That court upheld the use tax act of the State of Washington as applied to materials purchased outside that state, brought in and there used solely and exclusively in intrastate business. On January 30, 1939, the Supreme Court upheld the application of a use tax act (California's) to property purchased outside and brought within its borders for subsequent use in the course of mixed intrastate and interstate commerce. Southern Pac. Co. v. Gallagher, 306 U.S. 167, 59 S.Ct. 389, 83 L.Ed. 586, and Pacific Tel. & T. Co. v. Gallagher, 306 U.S. 182, 59 S.Ct. 396, 83 L.Ed. 595. See discussion Traynor, State Taxation and the Commerce Clause in the Supreme Court, 1938 Term, (1940) 28 Calif.L.Rev. 168, 180, 181.

A consideration of these two exemptions reveals the following scheme of exemption. The California legislature appears to have been doubtful whether or not the Supreme Court of the United States would uphold the constitutionality of the use taxes in their application to property purchased outside the state or in interstate commerce. It seemed apparent, however, that the commerce clause would not preclude the application of this tax to intrastate transactions. In order not to place local shipbuilders at a disadvantage, the legislature inserted the conditional exemption in Section 4.7 of the Use Tax Act. To complete the scheme, it was then necessary that the same type of craft be exempted from the sales tax. The result of the amendments was that if a ship of over 1,000 tons burden, purchased outside this state or in interstate commerce could not be subjected to a use tax, a ship of equal displacement manufactured in this state was free from these taxes; i. e., both the conditional exemption of Section 4.7 of the Use Tax Act and the absolute exemption of Section 5.7 of the Sales Tax Act applied.

Even before these exemptions became law, the Silas Mason Co. case, supra, held that the use tax was not violative of the commerce clause as applied to the facts of that case. Subsequently, in the decisions in the Southern Pac. Co. and Pac. Tel. & T. Co. cases, supra, most, if not all, doubt as to the constitutionality of these tax statutes under the commerce clause was dispelled.

Counsel for debtor argue that the conditional exemption of Section 4.7 of the Use Tax Act is not confined merely to the commerce clause and that, if the use tax applied to a similar ship purchased outside the state or in interstate commerce would violate any provision of the federal Constitution or any federal statute, the ship constructed in California is exempted from the use tax by Section 4.7 of the Use Tax Act. Debtor's answering brief, pp. 11, 12. There seems to be no way to determine whether provisions other than the commerce clause were intended to be included, but the words of the amendment, "under the Constitution or the laws of the United States of America," make that interpretation seem reasonable. At any rate, for the purposes of argument its correctness will be assumed.

The conditional exemption of Section 4.7 of the Use Tax Act is based upon the premise that the state has the authority to tax the ship in question. However, if the state is forbidden by the federal Constitution or any federal statute to exact the use tax of a similar ship purchased outside California, the ship which is manufactured in California will not be subjected to the use tax. Thus, in fairness to local shipbuilders, the state will forego the exercise of a power which it may legally exercise.

The specific contentions made by the debtor are that the imposition of the use tax upon a similar ship purchased outside the state or in interstate commerce would be invalid (1) as a "duty of tonnage" under Art. I, § 10, Clause 3, of the federal

Constitution; and (2) as a violation of Section 3 of the Act admitting California into the Union, Act Sept. 9, 1850, 9 Stat. 452, Ch. 50; and that, therefore, under either or both, the present case falls squarely within the exemption provisions of Section 4.7 of the Use Tax Act.

Article I, § 10, Clause 3, of the Constitution, reads in part as follows: "No State shall, without the Consent of Congress, lay any Duty of Tonnage * * *."

The policy underlying this provision is stated by Mr. Justice (now Chief Justice) Stone in Clyde Mallory Lines v. State of Alabama, 1935, 296 U.S. 261, 264, 265, 56 S.Ct. 194, 195, 80 L.Ed. 215:

"It seems clear that the prohibition against the imposition of any duty of tonnage was due to the desire of the framers to supplement article 1, § 10, Cl. 2, denying to the states power to lay duties on imports or exports, [citing cases] by forbidding a corresponding tax on the privilege of access by vessels to the ports of a state, and to their doubts whether the commerce clause would accomplish that purpose.[1] If the states had been left free to tax the privilege of access by vessels to their harbors the prohibition against duties on imports and exports could have been nullified by taxing the vessels transporting the merchandise."

■ A duty of tonnage within the meaning of the Constitution is a charge upon a vessel, as an instrument of commerce, for entering, lying in, or leaving a port. Huse v. Glover, 1886, 119 U.S. 543, 549, 550, 7 S.Ct. 313, 30 L.Ed. 487. All taxes and duties, regardless of name or form, which *operate* to impose a charge of this type are included, whether or not they are measured by the tonnage of the vessel. Clyde Mallory Lines v. State of Alabama, supra.

The contention of the debtor is that the use tax as applied to a boat purchased in another state, brought into California and used upon navigable waters within the state would impose a charge for the privilege of entering, trading or lying in a port in violation of this part of the Constitution. Thus, the argument continues, the present case falls within the conditional exemption of Section 4.7. The recommendation of the special master that the use tax be disallowed does not seem to be based upon the validity of this contention. The report states only that the tax might conflict with this constitutional provision.

■ The use or "compensating" tax was devised to equalize taxes in order that those who sold articles manufactured within in a state to buyers therein would not be placed at a disadvantage in competition with goods manufactured in other states and sold to buyers within the state. Henneford v. Silas Mason Co., supra.

■ The prohibition in the federal constitution against the imposition of duties of tonnage was a part of the scheme to give Congress control over the interstate and foreign commerce of the nation. Inman Steamship Co. v. Tinker, 1876, 94 U.S. 238, 245, 24 L.Ed. 118. The Supreme Court having held numerous times in the last few years that the use tax did not violate the commerce clause—because it was imposed *after that commerce had ended*—it is difficult to see how it would violate the prohibition against tonnage taxes.

In the Silas Mason case the contention was made that the use tax was a "protective tariff," hence a violation of the commerce clause. In disposing of that contention Mr. Justice Cardozo said (300 U.S. 577, at page 586, 57 S.Ct. 524, at page 528, 81 L.Ed. 814):

"A tariff, whether protective or for revenue, burdens the very act of importation, and if laid by a state upon its commerce with another is equally unlawful whether protection or revenue is the motive back of it. But a tax upon use, or, what is equivalent for present purposes, a tax upon property *after importation is over,* is not a clog upon the process of importation at all, any more than a tax upon the income or profits of a business * * *." (Emphasis added.)

---

[1] (Footnote of Mr. Justice Stone) "The adoption of the duty of tonnage clause followed a motion of Maryland delegates that 'No state shall be restricted from laying duties of tonnage for the purpose of clearing harbors and erecting light houses.' Despite the assertion that such works were peculiarly necessary in the Chesapeake, the convention proved hostile to state tonnage levies. There was uncertainty whether the commerce clause would forbid such duties: Gouverneur Morris said that it would not, Madison thought that it should, Sherman argued for a concurrent power over commerce with power in the United States to control state regulations. Whereupon the clause was added in its present form. See Madison's Notes of the Convention (for Sept. 15, 1787)."

Just as the use tax is not a tax on the act of importation, so it is not a tax upon the privilege of entering or leaving a port. It is a tax upon something which occurs after the ship has entered the port, viz., the use, storage or consumption of the property within the state.

This view seems to be borne out by the way the use tax operates. It is not a tax imposed every time a ship enters California waters. In fact it is not exacted at all of owners whose ships are not used, stored, etc., in this state. Thus it seems incapable of being used as an indirect method of imposing an import tax upon the cargo of a vessel. See Clyde Mallory Lines v. State of Alabama, supra.

█ It is, therefore, the opinion of this court that the use tax, as applied to a boat bought in another state and brought into California for use in this state, would not violate the constitutional prohibition against the exaction of tonnage taxes by the states. Thus, the conditional exemption of Section 4.7 can have no application.

The debtor next contends that the present case falls within the exemption of Section 4.7 because the imposition of the use tax upon a similar boat purchased outside the state or in interstate commerce would violate Section 3 of the Act admitting California into the Union, 9 Stat. 452, Ch. 50.

Section 3 of that Act provides in part: "All the navigable waters within the said State shall be common highways, and forever free, as well to the inhabitants of said State as to the citizens of the United States, without any tax, impost, or duty therefor * * *."

That Act clearly prohibits any tax, impost or duty for the use of the navigable waters within the state whether the commerce be interstate or intrastate. As previously indicated, the conditional exemption is bottomed on the premise that the state has authority to impose the tax on the ship manufactured in California. Supra, page 80. Therefore, it would seem that Section 4.7 of the Use Tax Act has no application here. Be that as it may, let us determine whether the imposition of the use tax on a ship brought from out-of-state would be a tax, impost or duty for the use of the navigable waters of this state, within the meaning of this federal statute.

█ Admittedly the barge in question is used within this state. It is a matter of common knowledge that a ship of 1,000 tons

burden can only be used within this state upon its navigable waters. The debtor argues that the prohibition of the federal statute would be meaningless if it were held that a tax upon the use of the boat upon those navigable waters did not constitute a tax upon the use of the waters themselves. The master's report does not feel it necessary to reach any conclusion with reference to this contention.

██ The power of Congress with respect to the admission of new states (Art. IV, Section 3, Federal Constitution) is not the power to admit political organizations which are unequal in power and dignity. The doctrine established in numerous decisions of the Supreme Court is that the admission of a new state into the Union imports that in internal affairs it has power equal to that of the other states. Coyle v. Smith, 1911, 221 U.S. 559, 566, 567, 31 S.Ct. 688, 55 L.Ed. 853. The restriction in the Act admitting California does not give to the United States any greater control of her navigable waters than it possesses over the waters of other states. Cardwell v. American Bridge Co., 1885, 113 U.S. 205, 5 S.Ct. 423, 28 L.Ed. 959. In other words, the regulation in the statute must have been passed under Congress' power to control interstate commerce. Pollard v. Hagan, 1845, 3 How. 212, 229, 11 L.Ed. 565.

█ The object of the section involved, as stated in the American Bridge Co. case, 113 U.S. at page 212, 5 S.Ct. at page 426, 28 L.Ed. 959, was as follows: "* * * to insure a highway equally open to all without preference to any, and unobstructed by duties or tolls, and thus prevent the use of the navigable streams by private parties to the exclusion of the public, and the exaction of any toll for their navigation * * *."

█ The use tax is not exacted for the use of the navigable waters of the state; it is a tax upon the consumer for the privilege of use or storage of tangible personal property within this state. It should be equally applicable regardless of the locus of such use or storage so long as it is within California. If we look at the use tax as a tax upon a transaction, which it really is in substance (see Powell, New Light on Gross Receipts Taxes, (1940) 53 Harv.L.Rev. 909, 939), it becomes even clearer that the use tax is not an exaction for the use of the waters.

Further, not only "use" but also "storage" or "other consumption" is taxable

under the Use Tax Act. Suppose after General Petroleum took delivery of the barge no cargo were available for a month, or a week, or a day or even an hour. It would seem that there was a "storage" which would ground the assessment of the use tax. (Cf. the situation in the Southern Pac. Co. case, supra, where the opinion said that the movement from unloading to final placement of the goods in an interstate railway facility was as nearly continuous as managerial efficiency could contrive, and yet the Supreme Court discerned a taxable event within the state.) In such a situation, then, the use tax would be exacted for "storage" which took place anterior to any usage of the navigable waters of the state.

 Recent cases involving the use tax have held that, with reference to articles purchased outside the taxing state which are used in mixed interstate and intrastate commerce, the use tax may be assessed without violation of the commerce clause. Southern Pac. Co. v. Gallagher and Pacific Tel. & T. Co. v. Gallagher, both supra. In these two cases the court said that between the conclusion of the interstate transit and the beginning of the interstate use, there intervened a retention and installation of the goods which constituted an event taxable by the state.[2] The Supreme Court has always persevered in its efforts to keep interstate commerce free from discriminatory state taxation. The use tax having been held not to violate the commerce clause under the circumstances above described it is difficult to see how it violates a statute which is passed under Congress' power to regulate interstate commerce unless the statute indicates an intention on the part of the Congress that such property shall not become a part of the common mass of taxable property within the state and is therefore not subject to the state taxing power. Cf. McGoldrick v. Gulf Oil Corp., 1940, 309 U.S. 414, 60 S.Ct. 664, 84 L.Ed. 840. We do not think that such an intent is indicated in the statute under discussion.

Consequently we hold that Section 4.7 of the Use Tax Act has no application.

The debtor, next contends that (1) in view of the administrative construction which it contends has previously been given to the Use Tax Act, the imposition of such a tax with respect to the barge built in California would violate the legislative intent as that intent is inferred from repeated reenactment of the statute with knowledge of such administrative construction; and that (2) to alter the construction now, even though the administrative authorities intend to exact the tax in all such cases in the future, would be illegally discriminatory. We may leave the alleged discrimination until later for the reason that if the previous construction has not been as the debtor contends, that point need not concern us.

Section 4.7 of the Use Tax Act purports to grant an exemption only under certain conditions. If, however, the state may constitutionally tax the ship purchased outside California or in interstate commerce, the condition of exemption is not fulfilled and there is no exemption of the ship manufactured in California. That would seem to place the barge within the taxing section of the Use Tax Act, Section 3, which reads in part as follows:

"An excise tax is hereby imposed on the storage, use or other consumption in this State of tangible personal property purchased from a retailer on or after July 1, 1935, for storage, use or other consumption in this State at the rate of three per cent of the sales price of such property. * * *"

The debtor argues that it has not been the practice or policy of the taxing authorities to assess the use tax against the storage, use or consumption of tangible personal property purchased and used within the state. It puts this case: A manufacturer of finished articles purchases in California various items of personal property from which to manufacture his finished articles. When he buys them the manufacturer gives his vendor a certificate stating that the component materials are to be resold in the form of tangible personal property, thus exempting the sale from the Sales Tax Act. When he manufactures his finished articles he may dispose of them in one of several ways: (a) He may sell them to an ordinary individual in California. The sales tax is payable by the manu-

---

[2] The norms which are applied to determine the propriety of taxation by a state and regulation by the federal government are concededly different. Santa Cruz Fruit Packing Co. v. N. L. R. B., 1938, 303 U.S. 453, 466, 58 S.Ct. 656, 82 L.Ed. 954; see discussion of problem in the opinion of Judge Yankwich in United States v. Food and Grocery Bureau of Southern California, D.C.S.D. Cal.1942, 43 F.Supp. 974.

facturer on the purchase price received. (b) He may sell them in California to an instrumentality of the Federal Government. No tax is payable under the Sales Tax Act. (c) He may make a contract in California for the sale of his finished articles and pursuant thereto deliver them to a vessel or other carrier for export. No tax is payable under the Sales Tax Act. (d) He may make a contract in California for the sale of his finished articles pursuant to the terms of which they are delivered to a railroad or other carrier consigned to the purchaser at a point in some other state. No tax is payable under the Sales Tax Act of California.

From this the debtor argues that in the situations above, where no sales tax was paid, the Board of Equalization has not assessed the use tax. And since the present case is in the same category it would be an unfair discrimination to subject the barge to the use tax.

The state admits that in situations (b), (c) and (d) above no sales tax is assessed. It explains why in those situations the use tax is not assessed. Thus in (b), Section 4(b) of the Use Tax Act exempts the Federal Government and its instrumentalities from payment of the use tax, and in (c) and (d) the consumer upon whom the use tax falls is outside the state and hence does not use, store or consume within the state under the meaning of the Use Tax Act.

The debtor insists that, although the consumer of the finished goods in situations (b), (c) and (d) is not subject to the use tax, the manufacturer, since he did not pay a sales tax on the component parts used in making the finished product, should be required to pay a use tax on them because he (the manufacturer) uses and stores them.

■ One answer to that contention is found in the Use Tax Act itself. Section 2, as amended by St.Cal.1937, pp. 1935, 1936, defines the terms "use" and "storage" as follows:

"(a) 'Storage' means and includes any keeping or retention in this State for any purpose except sale in the regular course of business or subsequent use solely outside this State of tangible personal property purchased from a retailer.

"(b) 'Use' means and includes the exercise of any right or power over tangible personal property incident to the ownership of that property, except that it shall not include the sale of that property in the regular course of business."

These definitions and those in Section 2 of the Sales Tax Act, especially subdivision (c), indicate that the act does not authorize a use tax to be levied on the user or storer of the component parts which are to make up a finished product irrespective of whether a sales or use tax can be levied on the retailer or consumer of such finished product.

■ Another answer is that here there is no attempt to assess the debtor for the use or storage of the component parts which went to make up the barge. In our case the tax is on the consumer of the finished product—the barge. The debtor is merely acting as collecting agent of the state. Use Tax Act, Section 6.

Examples cited by the state in its closing brief indicate that the Use Tax Act has not been construed to tax only use, storage or consumption of personal property purchased *outside* of California. Thus the Attorney General of the State of California advised the Board of Equalization that an Indian residing on a reservation as a ward of the federal government and engaged in a retail business could be required to collect from his customers a use tax on sales of tangible personal property.[3] He has also advised that national banks could be required to collect the use tax from its customers when it made sales of tangible personal property although under the California Constitution (Art. XIII, § 16) such banks were exempt from the sales tax.[4]

In this connection the special master goes a little further even than the debtor. His argument (Report 11, 12) seems to be as follows: The sales tax and use tax are complementary. The use tax is designed to catch the transactions the sales tax misses in order to establish equality between local and foreign retailers. The present transaction is one which is subject to the sales tax, but the legislature has seen fit to specifically exempt it from a sales tax. Section 5.7. It would be more reasonable to assume that if the legislature meant to subject this type of vessel to a tax it would have repealed the exemption

---

[3] Opinion NS 799 rendered January 13, 1938.

[4] Opinion NS 1946 rendered September 13, 1939.

in the sales tax and, having failed to do so, it must have been the intention of the legislature not to subject this type of vessel to any type of tax. It is on this conclusion that the recommendation for disallowance of the use tax claim seems to be based.

Shortly after the passage of the Use Tax Act of California, Professor Roger J. Traynor of the School of Jurisprudence of the University of California (now an Associate Justice of the Supreme Court of this State) wrote in the California Law Review (Traynor, The California Use Tax (1936) 24 Calif.L.Rev. 174, 176, 177):

"It (the use tax act) imposes an excise tax of 3% of the sales price upon the storage, use or other consumption of tangible personal property purchased from retailers on or after July 1, 1935, for storage, use or other consumption in the state. The rate is thus identical with the sales tax rate. The act does not apply to property subject to the sales tax; it thus directs itself principally to that property purchased outside the state or in interstate commerce, and applies regardless of whether the retailer is located in the state or in another state or foreign country. Liability for the tax falls upon the person storing, using or otherwise consuming the property and is extinguished only when he pays the tax either to the retailer from whom he must receive a receipt or to the state when the retailer maintains no place of business in the state * * *.

"It is the intent of the use tax merely to supplement the sales tax by imposing upon those subject to it a tax burden equivalent to that of the sales tax with the same specific exemptions in each case. The act accordingly limits the tax to the *'use * * * of property purchased for use * * *'* within the state * * *.

"The California Use Tax operates in conjunction with the sales tax to exact from all consumers of tangible personal property within the state a tax amounting to 3% of the sale price of the property * * *."

The complementary character of the use tax is clear. Douglas Aircraft Co. v. Johnson, 1939, 13 Cal.2d 545, 90 P.2d 972; Chicago Bridge & Iron Co. v. Johnson, Dec. 15, 1941, 19 Cal.2d 162, 119 P.2d 945. In the latter case the court said (119 P.2d at page 947):

"It cannot be doubted that the purpose sought to be accomplished by a statute relating to taxation is important in construing such statute and in determining the scope of its application. City and County of San Francisco v. San Mateo County, 17 Cal.2d 814, 112 P.2d 595. One of these purposes is to make the coverage of the tax complete to the end that the retail sales tax (Stats.1933, p. 2599) will not result in an unfair burden being placed upon the local retailer engaged solely in intrastate commerce as compared with the case where the property is purchased for use or storage in California and is used or stored in this state. The two taxes are complemental to each other with the aim of placing the local retailers and their out-of-state competitors on an equal footing. The fundamental principles to be considered in applying such an act are expressed in the case of Southern Pacific Co. v. Gallagher, 306 U.S. 167, 171, 59 S.Ct. 389, 390, 83 L. Ed. 586, as follows: 'The Use Tax Act is complemental to the California Retail Sales Tax Act of 1933. The latter levies a tax upon the gross receipts of California retailers from sales of tangible personal property; the former imposes an excise on the consumer at the same rate for the storage, use or other consumption in the state of such property when purchased from any retailer. As property covered by the sales tax is exempt under the use tax, all tangible personalty sold or utilized in California is taxed once for the support of the state government * * *.'"

There seems to be nothing in either of these cases or the article by Professor Traynor which would compel the conclusion reached by the master.

At the time the California Use Tax Act was enacted, local sales were subject to the sales tax, but goods purchased outside California or in interstate commerce were thought to be immune from sales taxes in the state of destination. Cf. McGoldrick v. Berwind-White Coal Mining Co., 1940, 309 U.S. 33, 60 S.Ct. 388, 84 L.Ed. 565, 128 A. L.R. 876. The use tax was designed to tax an event which occurred within the state in order to equalize taxes between local and foreign retailers. The transactions which were subject to a sales tax were exempted from the use tax in order that goods purchased in California would not be subject to both the use and the sales tax. The use tax was meant to operate as the complement of the sales tax so that all tangible personal property sold or utilized in California would be taxable once for the support of the state government. Southern

Pac. Co. v. Gallagher, supra. The master's conclusion does not accomplish that result.

The scheme which the concurrent passage of Section 4.7 of the Use Tax Act and Section 5.7 of the Sales Tax Act seems to disclose has already been discussed to some extent in the earlier part of this opinion. Stated in another manner, it seems that, if the ship purchased outside California or in interstate commerce could be constitutionally taxed, the conditional exemption of Section 4.7 of the Use Tax Act would not apply. The absolute exemption of Section 5.7 of the Sales Tax Act would remain but the ship built within the State would be taxable by the state under the Use Tax Act. It would seem to be unnecessary for the legislature to repeal the specific exemption of the Sales Tax Act in order to secure equality between foreign and local retailers. If, as was stated in the Chicago Bridge & Iron Co. case, supra, one of the purposes of the use tax was "to make the coverage of the tax complete to the end that the retail sales tax * * * will not result in an unfair burden being placed upon the local retailer" then we should not assume that, in making the conditional exemption of Section 4.7 of the Use Tax Act, the legislature meant to allow the coverage of the Use Tax Act to result in an unfair burden being placed upon the foreign dealer.

It does not seem to the court that we can assume that had the legislature intended the result concluded by the master it would have been so inept as to word Section 4.7 as it did.

■ This is a transaction which could be subject to a sales tax but it has been specifically exempted from it. We have attempted to show the scheme which seems to be manifest from the exemption in the Sales Tax Act and the conditional exemption in the Use Tax Act. Certainly the case would not have arisen had the legislature repealed the exemption in Section 5.7 of the Sales Tax Act, but it was not required so to do. There is no compulsion upon a state to exact a sales tax on all transactions which it legally may. Since the case of McGoldrick v. Berwind-White Coal Mining Co., supra (and its companion cases, McGoldrick v. Felt & Tarrant Mfg. Co., 1940, 309 U.S. 70, 60 S.Ct. 404, 84 L. Ed. 584, and McGoldrick v. A. H. Du Grenier, Inc., 1940, 309 U.S. 70, 60 S.Ct. 404, 84 L.Ed. 584) use taxes may not be so necessary, but their legality is certainly not lessened. The sales tax might be abolished completely and all buyers, irrespective of the origin of the goods, be required to pay a use tax for the use, storage or other consumption of an article purchased. Henneford v. Silas Mason Co., supra, 300 U.S. at page 584, 57 S.Ct. 524, 81 L.Ed. 814. It seems to me that in so far as ships of over 1,000 tons burden manufactured in this state are concerned, the State of California has abolished the sales tax. Whether they are to be subject to a use tax depends upon whether a similar ship purchased outside of California or in interstate commerce could be subjected to the use tax. The cases are clear that the commerce clause does not prevent the exaction of the use tax. We have here held that none of the provisions of the Federal Constitution or any Federal statute pointed out forbade that. Nothing in the Use Tax Act indicates that a ship manufactured in this state was meant to be exempt from the Use Tax Act.

■ When we say that the use tax does not apply to property subject to the sales tax (Use Tax Act, Section 4(a), we do not mean that all property which *could be* subjected to the sales tax is exempt from the use tax, but, rather, that all property *not actually covered* by the sales tax is subject to the use tax. The absolute exemption in Section 5.7 does not, it seems to me, manifest an intention to make a ship like the one in question absolutely tax free unless the conditional exemption of Section 4.7 is applicable. If it meant to exempt property completely it would seem that the legislature would have inserted an exemption in both acts. We do not think that it has done so here.

■ The State Board of Equalization —the body charged with the administration of the statute—has placed upon that statute a construction which to this court seems reasonable and in consonance with the scheme manifested in Sections 4.7 and 5.7. The master's view and that contended for by the debtor certainly would not secure equality between local and foreign retailers. On the contrary, there would be a discrimination against the person who purchased his ship in another state or in interstate commerce. The California legislature could hardly have contemplated exempting intrastate sales of boats from both the sales and use taxes while subjecting interstate sales to the use tax. Such a scheme would be discriminatory and a hindrance to

interstate commerce. It is fundamental that where a statute is open to two constructions; one of which would make the act constitutional and the other unconstitutional, a court will adopt the former, if it can reasonably do so.

 Statutes imposing taxes are liberally construed in favor of the taxpayer. Los Angeles County v. Jones, 1939, 13 Cal. 2d 554, 90 P.2d 802, 806. However, tax statutes are not to be approached with a spirit of hostility and with a purpose of ignoring the intent of the legislature. No construction should be given a statute which would make its application unfair or unreasonable. In re Estate of Parrott, 1926, 199 Cal. 107, 112, 113, 248 P. 248. The plain intent of the legislature must not be disregarded. Thompson v. Board of Supervisors of Fresno County, 1936, 13 Cal. App.2d 134, 56 P.2d 571. Exemptions are subject to the same rule of strict construction. Bay Cities Transp. Co. v. Johnson, 1937, 8 Cal.2d 706, 68 P.2d 710, 712. These principles seem to compel the conclusion that the barge is subject to the use tax.

The debtor states that the exemption is the only conclusion that will give shipbuilders in California the competitive position which was intended by the legislature. By that we take it the debtor means equality. Rule 11 of the State Board of Equalization reads as follows:

"The tax does not apply to the use or storage of property purchased for use in interstate or foreign commerce and actually placed in use in interstate or foreign commerce prior to its entry into this State."

The debtor states that this enables a purchaser of a boat elsewhere to place a cargo on it and thus evade the tax. That may be the case but the remedy for such a situation does not lie with this court.

The order of this court of December 15, 1941, to which we have already adverted, allowing the retail sales tax portion of the claim as fixed at $3,806.21, plus interest, did not include the penalty of 10% on that fixed amount. This penalty amounted to $380.62, of which $357.90 was a penalty on sales taxes which accrued prior to bankruptcy and $22.72 was a penalty on sales taxes which accrued subsequent to bankruptcy. There is also a claim by the state for a penalty of $316.57 on the use tax due on the sale of the barge.

 The parties are agreed that penalties on taxes accrued prior to bankruptcy are not allowable under Section 57, sub. j of the Bankruptcy Act, 11 U.S.C.A. § 93 sub. j, but that under the rule of Boteler v. Ingels, 1939, 308 U.S. 57, 521, 60 S.Ct. 29, 84 L.Ed. 78, 442, penalties on taxes accrued subsequent to bankruptcy are allowable.

The master has recommended that the penalty of $357.92 which accrued before bankruptcy be disallowed and that the penalty of $22.72 which accrued after bankruptcy be allowed. These recommendations are accepted.

The master made no recommendation with reference to the penalty on the use tax and inasmuch as he recommended that the use tax claim be disallowed, no recommendation on the penalty on such claim was necessary. This court has held that the use tax claim should be allowed and so it is necessary to determine the status of the penalty on that claim.

As we understand the facts, the barge transaction occurred before the commencement of bankruptcy and under the rules of law stated above, the penalty on it is disallowed.

To recapitulate: (1) the use tax claim will be allowed, plus interest as prayed; (2) the penalties accruing before the commencement of bankruptcy are disallowed; (3) the penalty accruing subsequent to the commencement of bankruptcy is allowed.

It is so ordered.